**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francisco SACCO, Defendant–Appellant.**

**No. 86–3143.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1988.

Decided March 8, 1989.

Jeffrey P. Robinson, Seattle, Wash., for defendant-appellant.

Peter O. Mueller, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, WALLACE and HUG, Circuit Judges.

WALLACE, Circuit Judge:

Sacco appeals from his convictions for failure to report the transporting of more than $10,000 across the United States/Canadian border and for making false statements to customs officials in violation of 31 U.S.C. §§ 5316 and 5322(a), and 18 U.S.C. § 1001. Sacco contends that the district court erred by permitting the jury to replay the videotaped deposition of a prosecution witness after deliberations had begun. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. We hold that the court did not abuse its discretion in authorizing a second viewing of the videotaped deposition, and therefore affirm Sacco's convictions.

I

On February 14, 1986, Sacco and a passenger, Milito, approached the United States border from the Canadian side in Sacco's car. A customs inspector, after seeing identification and asking a few questions, directed Sacco and Milito to park the car and go inside for further inspection.

A customs official explained the currency law and requested Sacco and Milito to fill out a customs form. They both checked the "no" answer to the question inquiring whether they were transporting more than $10,000 in United States currency or its equivalent. Sacco said that he had $1,400 in United States currency and $1,000 in Canadian currency, and that there was nothing of value in the car. Sacco then produced the $1,820 in United States currency and $1,520 in Canadian currency he was carrying. Milito had approximately $1,000 in United States currency on his person.

During this time, customs officials searched Sacco's car. Inside the trunk they found rolls of Canadian currency amounting to about $20,000 (Canadian), mostly in $100's. The money was in a brown paper bag which was in a brown shaving kit which was inside a black plastic bag. After counting the currency, the customs officials dusted it with fluorescent powder and replaced it in its original location.

Sacco and Milito were then permitted to proceed into the United States under surveillance. They drove to a restaurant in Blaine, Washington, where they remained for an hour and a quarter having lunch. After lunch, the surveillance agents observed the two men return to the car, and saw Sacco open the trunk and rummage around in it. Both men then got in the car, and Sacco drove around the streets of Blaine for a short time, stopped the car, got out, and went into the trunk again. The agents then arrested Sacco and Milito and took them back to the customs inspection station. There, examination revealed traces of the fluorescent powder on Sacco's right hand. No fluorescent powder was found on Milito's hands. Agents searching the trunk discovered the money was not inside the plastic bag where they had left it, but under a rug.

Milito was detained as a material witness and subsequently examined and cross-examined in a videotaped deposition. Milito was not available for trial, but an edited version of his videotaped deposition was played for the jury. During the deposition, Milito testified that he and Sacco were to have lunch with two women whom they had met the night before in a bar in Vancouver. Because he and Sacco were detained by customs, when they reached the restaurant the women were no longer there.

Milito testified that he was not aware of the currency in the trunk until after his arrest, that the money was not his, and that he had no connection with it. He stated that when they left the restaurant, Sacco opened the trunk, reached inside, and commented, "Yeah, they went in the

trunk," meaning that the customs officials had examined the contents of the trunk. He testified that Sacco said that he wanted to park somewhere else and examine the trunk thoroughly.

Sacco's defense was that he was not the owner of the money and that he did not know it was in the car. Sacco did not testify, but called Janet and Frank Sansalone. Each was cross-examined thoroughly. Their direct testimony indicated that they were the owners of the cash, and that Frank Sansalone had placed it in the car.

Janet Sansalone testified that after her mother's death, she and her husband discovered $24,000 (Canadian) in cash in her mother's house. Rather than put it in the bank, she and her husband kept it at home in a closet so they could use it to purchase farm equipment in cash. Frank Sansalone testified that the money was to be used to buy farm equipment on a trip he and Sacco had planned through Western Canada and the United States, followed by a holiday in Los Angeles. They were to leave on the day of Sacco's arrest. He stated that because his wife was unaware of the trip, he secretly obtained the cash and placed it and a few items of clothing in the trunk of Sacco's car two days earlier. He testified that he never told Sacco that the money was in the trunk.

After deliberations began, the jury asked to view the videotape of Milito's deposition. Though citing no authority, Sacco's counsel objected, arguing that presenting Milito's testimony again would "tend to emphasize it over other evidence in the case." The court denied an alternative defense request to reread to the jury part of Frank Sansalone's testimony and to allow brief defense argument. The court granted the jury's request, but required the videotape to be played in its entirety.

The jury found Sacco guilty on both counts. This appeal followed.

## II

■ A trial court's decision to replay videotaped testimony during jury deliberations is reviewed for abuse of discretion. *United States v. Binder*, 769 F.2d 595, 600

(9th Cir.1985) (*Binder*), citing *United States v. Sims*, 719 F.2d 375, 379 (11th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). "Undue emphasis of particular testimony should not be permitted" after the jury has begun deliberations. *Binder*, 769 F.2d at 600. Our concern with rereading or replaying testimony is that, in addition to the delay involved, it may place undue emphasis on testimony considered a second time at such a late stage of the trial. *Id.; see United States v. Nolan*, 700 F.2d 479, 486 (9th Cir.) (*Nolan*), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). In exercising its "great latitude" over whether to allow rereading or replaying of testimony, *Nolan*, 700 F.2d at 486, the court must evaluate the likelihood of undue emphasis in light of the "particular facts and circumstances of the case." *Binder*, 769 F.2d at 600.

"Videotaped testimony is unique." *Id.* Replaying videotaped testimony creates concerns not present when rereading written testimony. "It enables the jury to observe the demeanor and to hear the testimony of the witness. It serves as the functional equivalent of a live witness." *Id.* In *Binder*, however, we did not establish a per se rule against replaying videotaped testimony. The decision to replay testimony is within the broad discretion of the trial judge to be exercised on a case-by-case basis. *Id.* at 600–01; *see United States v. King*, 552 F.2d 833, 850 (9th Cir. 1976) (discretion granted trial judge to reread testimony is large, and determination of whether discretion is abused turns on circumstances of the individual case), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

In *Binder*, the defendant was accused of child molestation. The district court and the parties agreed to substitute the children's videotaped testimony for their live testimony in order to relieve the children's apprehensions about appearing in court. 769 F.2d at 598. The government offered no physical evidence of child molestation; the sole evidence of actual criminal acts of molestation was presented through the

children's videotaped testimony. *Id.* at 600–01. The defense was that these acts did not occur. Thus, the credibility of the children became a crucial issue. *Id.* at 601. We concluded that allowing the jury to see and hear "the functional equivalent of live testimony" for a second time in the jury room unduly emphasized the children's testimony. *Id.* at 601 & n. 1.

There were numerous particular facts and circumstances which we found problematic in *Binder.* The jury saw and heard the videotape not in open court in the presence of the defendant, defense counsel, the prosecutor, and the judge, but in the jury room. *Id.* Moreover, the jury was allowed to skip preliminary portions of the tape, though its request to replay other portions of the tape selectively was denied. *Id.* at 598. We observed that "failure to replay the tape in its entirety may have placed an undue emphasis on the portion of the testimony revealed to the jury a second time." *Id.* at 601. Although the government presented other witnesses, permitting the replay in effect "allowed the repetition of the government's case against Binder." *Id.*

■ The particular facts and circumstances surrounding the replaying of videotaped testimony in *Binder* differ significantly from those here. Of consequence are distinctions with regard to the quantum of other evidence against the defendant, the importance of the videotaped testimony in relation to other evidence, and the manner in which the videotape was replayed. Here, there was ample physical evidence, aside from the videotape, of Sacco's criminal conduct. There was concrete physical evidence that Sacco knew the location of the money in his trunk and that he touched it after customs agents dusted it with fluorescent powder. There was corroborative testimony by customs agents that Sacco had done something with his hands inside the trunk. Replay of the videotape did not, therefore, effectively repeat the entirety of the government's case against Sacco. *See id.*

In *Binder,* the direct conflict between the testimony of the defendant and the videotaped testimony of the complaining witnesses made the jury's determination of credibility a crucial issue. *Id.* Repetition of the very testimony which, if believed, would destroy the credibility of the defendant unduly emphasized the videotaped testimony. *Id.* Here, to the contrary, the defendant did not testify, and his credibility was not directly at stake. Nor did Milito's videotaped testimony directly conflict with that of other defense witnesses. *See, e.g., United States v. DePalma,* 414 F.2d 394, 396 (9th Cir.1969) (danger that reading portions of testimony will result in undue emphasis "particularly ... when the defendant's evidence is diametrically opposed to that of the prosecution, or vice versa"), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970). Sacco suggests that Milito's statements conflicted with Frank Sansalone's testimony that he did not tell Sacco about placing the money in the trunk. Milito's testimony that when Sacco looked in the trunk and said, "Yeah, they went in the trunk," presents no direct conflict with Sansalone's testimony. Milito's testimony only indicates that Sacco knew enough about the placement of the contents of his trunk before the episode at the border to be aware that those contents had been rearranged. If the jury had believed that Sansalone put the money in the paper bag in the shaving kit in the plastic bag without telling Sacco, Milito's testimony would only have suggested that Sacco realized the plastic bag had been disturbed.

In *Binder,* the jury was permitted to skip "preliminary portions of the tape." 769 F.2d at 598. The jury's viewing of an abridged version of the tape, rather than the tape in its entirety, could have placed an undue emphasis on the specific portion of testimony revealed for a second time. *Id.* at 601. Moreover, in the privacy of the jury room, a jury, unsupervised by the judge, might repeatedly replay crucial moments of testimony before reaching a guilty verdict. Here, to the contrary, the tape was played in its entirety, in open court, under the supervision of the court with Sacco and the attorneys present. Thus, the problems arising from the

abridged replay in *Binder* raise no danger of undue emphasis here. *See id.*

In *Binder*, the court never consulted either counsel or the defendant with regard to the jury's requests to replay the tape and to do so selectively. *Id.* at 598. We did not reach this issue because we found the replay erroneous on other grounds. *Id.* at 601. Here, by contrast, the court notified Sacco, his counsel, and the government of the jury's request. The court afforded both sides the opportunity to object. Sacco's counsel was allowed to specify the precise testimony the jury might unduly emphasize and to suggest alternatives. The district court ultimately disagreed with counsel's arguments predicting undue emphasis, and rejected the proposed alternatives. Still, these procedures indicate that the district court reached its decision after careful consideration. We conclude that the particular facts and circumstances of this case indicate that the district court did not abuse its discretion.

AFFIRMED.