UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus FELIX–RODRIGUEZ,
Defendant–Appellant.

No. 93–30082.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 3, 1994.

Decided May 5, 1994.

Sheryl Gordon McCloud, Law Offices of Irwin H. Schwartz, Seattle, WA, for defendant-appellant.

Francis J. Diskin, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: WRIGHT, CANBY, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON.

T.G. NELSON, Circuit Judge:

## I

## OVERVIEW

Jesus Felix–Rodriguez (Felix) appeals his jury conviction for conspiracy to distribute cocaine (Count One) in violation of 21 U.S.C. § 846; distribution of cocaine base (Counts Two–Five), and possession of cocaine base with intent to distribute (Count Six), all in violation of 21 U.S.C. § 841. We must determine whether the replay of a tape-recorded conversation during jury deliberations placed undue emphasis on that evidence and whether Felix's absence from the proceeding constituted harmless error. We find that the replay did not unduly emphasize the evidence. Although we conclude that the district court erred in conducting the replay without the defendant present, the error was harmless beyond a reasonable doubt. Accordingly, we affirm.[1]

## II

## BACKGROUND

This case arises from multiple distributions of cocaine from late 1991 through early 1992. The cast of characters in this cocaine conspiracy included Felix, John Applewhite (John), his sister Roslynd Applewhite (Roslynd), and Orlando Gripper (O.G.). In early 1990, John and Felix became friends while both were serving prison terms for cocaine offenses in state prison at Jamestown, California. During that time, they discussed the possibility of Felix supplying John with co-

caine after they were released from prison. Felix spoke very little English, and thus John enlisted the aid of Roslynd, who could speak Spanish, to act as a go-between.

After Felix was released from prison, Roslynd contacted him about obtaining cocaine. Felix responded that he did not have any cocaine yet but that Roslynd should keep trying. After John got out of jail, he and Roslynd made three trips to Felix's home in Porterville to obtain cocaine. Shortly thereafter, Roslynd was arrested as a result of a sting operation and charged with drug offenses. She agreed to cooperate with the authorities in order to help them arrest Felix. As part of her cooperation with the Government, Roslynd participated in a tape-recorded telephone conversation with Felix. During that conversation Roslynd and Felix discussed the possibility of Roslynd obtaining an additional kilo of cocaine. Felix was subsequently arrested.

A federal grand jury in the Western District of Washington returned a six-count indictment against Felix and John Applewhite for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count One); distribution of cocaine base in violation of 21 U.S.C. § 841 (Counts Two–Five); and possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841 (Count Six).

At trial, the Government played the tape-recorded conversation for the jury. Because it was in Spanish, Roslynd read an English transcript of the conversation to the jury after they heard the tape recording. During that conversation, Felix told her that he did not have any "work" but that she should call back in a week because she could obtain a full truckload of "firewood" at that time. Roslynd explained that she and Felix used codes when discussing drug deals. They never used the word "cocaine" or "drugs" over the telephone; instead, the terms "work" and "firewood" really meant drugs.

During deliberations, the jurors requested a transcript of the taped conversation be-

---

**1.** Felix has raised numerous additional arguments which we have resolved in a separate, unpublished memorandum.

tween Felix and Roslynd. The district court permitted the jury to hear a replay of the recorded conversation and distributed to the jurors a transcript of the English translation to be used during the replay. It did not, however, permit the jurors to take the transcript into the jury room. During the replay, the district court excluded the defendant, defense counsel and the prosecutor from the courtroom. The judge, his law clerk, the court clerk and the court reporter remained. Defense counsel specifically stated that he had no objection to clearing the courtroom. He only objected to the jury receiving the English translation of the taped conversation. Prior to the replay, the judge instructed the jurors that the tape would be played and that they should not discuss it until they returned to the jury room. He gave them transcripts of the tape and instructed them that the tape was evidence but that the transcripts were not evidence. After the replay, the transcripts were collected from the jurors and they returned to continue deliberating. The jury convicted Felix on all counts. The district court sentenced him to 275 months in prison with five years of supervised release.

## III

## DISCUSSION

Felix contends that the district court erred in permitting the tape-recorded conversation between Felix and Roslynd to be replayed during jury deliberations. Felix objects to this procedure on two grounds. First, he contends that replaying the tape-recorded conversation between Felix and Roslynd placed undue emphasis on that evidence. Second, he argues that the procedure violated his right to be present in the courtroom.

### A. *Undue Emphasis*

■ We review for an abuse of discretion the district court's decision to replay the tape-recorded conversation. *See United States v. Sacco,* 869 F.2d 499, 501 (9th Cir. 1989). "Undue emphasis of particular testimony should not be permitted after the jury has begun deliberations." *Id.* (internal quotations omitted). "Our concern with rereading or replaying testimony is that, in addition

to the delay involved, it may place undue emphasis on testimony considered a second time at such a late stage of the trial." *Id.* However, the district court has wide latitude to determine whether or not to replay testimony and should consider the likelihood of undue emphasis in light of the particular circumstances of any given case. *Id.*

In *United States v. Binder,* 769 F.2d 595 (9th Cir.1985), this court held that it was error to replay a videotape of a child witness's testimony in a molestation case. We reasoned that replay of the videotape unduly emphasized the testimony because: (1) the tape was the only evidence of the molestation; (2) it served as the functional equivalent of a witness because it was the only testimony presented; (3) the witness's credibility was a crucial issue; (4) the videotape was not presented in open court in the presence of the defendant, defense counsel, the prosecutor and the judge; and (5) the replay occurred in an abridged fashion. As a consequence, we concluded, the replay may have taken on inappropriate significance in the jury's deliberations. *Id.* at 600–01, 601 n. 1. Without corroborating evidence, the replay in effect allowed repetition of the Government's case. *Id.* at 601.

In *Sacco,* we held that the district court did not abuse its discretion in allowing the videotaped testimony of a material witness to be replayed during jury deliberations. *Id.* at 503. *Sacco* distinguished *Binder* with regard to the quantum of other evidence against the defendant and the manner in which the videotape was replayed. *Sacco,* 869 F.2d at 502.

■ As in *Sacco,* the tape-recorded conversation was not the only evidence against Felix. There was sufficient corroborating evidence against Felix such that replay of the tape did not effectively repeat the Government's entire case. *See id.* Moreover, it was played in its entirety under the supervision of the judge and after giving both sides an opportunity to object. *See id.* at 502–03. We conclude that undue emphasis did not occur.

### B. *Defendant's Absence During Replay*

Felix also contends that his absence from the courtroom during the replay violated his

right to be present during a "stage of the trial" pursuant to Fed.R.Crim.P. 43.[2] Felix's counsel did not raise a Rule 43 objection to replaying the tape. He objected only on the ground that the district court should not permit the jury to receive the transcript, an English translation of the Spanish conversation. Absent a Rule 43 objection, we must determine whether he waived his right to be present. Although we conclude that Felix did not waive that right, we hold that the error in excluding him was harmless.

■ We have held that a defendant has a right to be present when tape-recorded conversations are replayed to a jury during its deliberations. *United States v. Kupau*, 781 F.2d 740, 743 (9th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986). Such a procedure is "properly viewed as a stage of the trial at which the presence of the defendant is required" and this right cannot be waived by counsel. *Id.* Even though in some instances a defendant is held to have waived his right to be present under Rule 43, *see United States v. Gagnon*, 470 U.S. 522, 527–28, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985), this is not such a case. In *Gagnon*, the Supreme Court held that four defendants waived their right under Rule 43 to be present during judge's *in camera* interview with a juror. *Id.* The defendants' failure to assert their right to be present under Rule 43 constituted a waiver of that right. *Id.* at 529, 105 S.Ct. at 1485. *Gagnon* is distinguishable because it involved the defendants' *voluntary* absence "with respect to a relatively minor incident." *Id.* The defendants' failure to object to an *in camera* interview of which they were aware and which did not occur in open court, was sufficient to constitute a waiver. *Id.* at 528–29, 105 S.Ct. at 1485–86. The Supreme Court noted that its holding was consistent with Rule 43(b) which states that "the defendant shall be considered to have waived his right to be present whenever a defendant, initially pres-

ent, is *voluntarily* absent after the trial has commenced...." (emphasis added). *See id.* at 529, 105 S.Ct. at 1485.

■ Unlike the defendant in *Gagnon*, Felix was not present when the trial judge told counsel about the jury's request to replay the conversation and his decision to do so. Felix never had the opportunity to assert his rights under Rule 43. His failure to object could not be a waiver of his right to be present. As in *Kupau*, it was error to permit the replay without first obtaining Felix's personal waiver of his right to be present. *Kupau*, 781 F.2d at 743.

■ Nonetheless, we hold that the error was harmless beyond a reasonable doubt. *See id.* In *Kupau*, an FBI agent, who was present during the trial, replayed the tape for the jury. The courtroom was cleared of all individuals except the agent and the jury. We held that such a procedure did not constitute reversible error. *Id.* at 742. Although we stated that in hindsight the appropriate procedure would have included replaying the tape in open court with a court reporter, the judge, counsel, and the defendant present, we found no reasonable possibility of prejudice. *Id.* at 744. We reasoned that counsel's failure to object, the district court's cautionary instructions, its obvious efforts to prevent extraneous influences, and the absence of evidence indicating that the jury was influenced by outside matters rendered the error harmless because the defendant's presence would not have affected the outcome. *Id.*

As in *Kupau*, several factors convince us that Felix suffered no harm from the replay of the taped conversation.[3] Felix was present when the court originally admitted the taped conversation into evidence at trial and when Roslynd read the English transcript to the jury. Before the court replayed the tape, it cautioned the jurors not to discuss the matter until after they had returned to deliberate. It also instructed them to consider only the tape as evidence and not the transcript. Finally, it collected the transcripts

---

**2.** Fed.R.Crim.P. 43(a) provides:
The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

**3.** Here, unlike *Kupau*, there was a court reporter present during the replay. Therefore, we have the benefit of a record which allows us to review the proceeding.

from the jurors before they returned to deliberate. The jurors were not exposed to extraneous matters.

In this context, and in light of the sufficient corroborating evidence against Felix, we find that Felix's presence at the replay would not have affected the outcome and he suffered no prejudice from the procedure. The error was harmless beyond a reasonable doubt.

AFFIRMED.