89 F.3d 848
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith Steven YOUNG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edelmiro TAMEZ, Jr., Defendant-Appellant.
 Nos. 95-30203, 95-30215.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 10, 1996.*
Decided June 25, 1996.
 
 Before: WRIGHT, PREGERSON and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Keith Steven Young and Edelmiro Tamez, Jr. (defendants) appeal their convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Young was sentenced to 121 months imprisonment, five years of supervised release and a $10,000 fine. Tamez was sentenced to 20 years imprisonment and 10 years of supervised release. In a separate, published opinion, we reverse and remand for an evidentiary hearing on the government's refusal to grant use immunity to a potential defense witness. Here, we address the remaining contentions raised by defendants.
 
 I. Multiple Conspiracies Instruction
 
 3
 We review the district court's determination whether there was a factual basis for giving a multiple conspiracies instruction for abuse of discretion[1] and related issues of law de novo. United States v. Taren-Palma, 997 F.2d 525, 530 (9th Cir.1993), cert. denied, 114 S.Ct. 1648 (1994). In determining whether there was unlawful variance between the indictment for a single conspiracy and a proof of multiple conspiracies, we view "the evidence in the light most favorable to the prosecution to see whether any rational juror could have found a single conspiracy beyond a reasonable doubt." United States v. Shabani, 48 F.3d 401, 403 (9th Cir.1995); United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984).
 
 
 4
 Our review of the record reveals that the nature of the scheme; the identity of the participants; the quality, frequency, and duration of the transactions; and the commonality of times and goals all support the existence of "one overall agreement" in this case. Arbelaez, 719 F.2d at 1458; United States v. Smith, 790 F.2d 789, 795 (9th Cir.1986). The objective of the conspiracy was to distribute cocaine for profit. Cf. Arbelaez, 719 F.2d at 1458; Shabani, 48 F.3d at 403. Both Tamez and Young used John Drake as a middleman for distributing kilogram quantities of cocaine to James Larsen, Nelson Mariani, and Clarence Paulsen. Larsen and Paulsen, in turn, provided the cocaine to numerous subdistributors in the Spokane area.
 
 
 5
 Young hypothesizes that the jury could have based his conviction on a separate conspiracy between himself and Daniel Faunce. This contention is meritless. Faunce testified that he purchased between one-eighth of an ounce and one ounce of cocaine from Young on six or seven occasions. These transactions were purely for Faunce's personal use. There was no evidence of any agreement that Faunce would subsequently redistribute the cocaine that he obtained from Young. Nor is there any legal support for Young's contention that his sale of cocaine to Faunce for Faunce's personal use could constitute a conspiracy.
 
 
 6
 Tamez's arguments are equally unavailing. First, Tamez asserts that a taped conversation between Drake and himself established a separate conspiracy to obstruct justice. However, the conversation occurred after Drake was arrested and began cooperating with the police. As the district court properly instructed the jury, there was no conspiracy to obstruct justice if at the time the agreement was reached, the only other person participating in the agreement was a government agent. United States v. Schmidt, 947 F.2d 362, 367 (9th Cir.1991) (true agreement requires conspiracy with at least one bona fide co-conspirator). The district court also properly instructed that Drake was acting as a government agent from the time of his arrest and agreement to cooperate with law enforcement officials. United States v. Escobar de Bright, 742 F.2d 1196, 1199 (9th Cir.1984).
 
 
 7
 Tamez also contends that because Larsen and Paulsen competed for business, they did not share a commonality of goals necessary for a single conspiracy. We expressly rejected a similar argument in Arbelaez. In that case, we found a single overall conspiracy even though all four defendants competed in supplying a single middleman, Beron, with cocaine. 719 F.2d at 1459. As in Arbelaez, Larsen and Paulsen benefitted from each other's participation in the conspiracy because the existence of several subdistributors assured Drake, the middleman, a steady market for the cocaine that he obtained from Tamez and Young. The fact that Larsen and Paulsen may have competed with each other for Drake's cocaine did not make them any less interested in maintaining a functioning distribution network. Cf. id.
 
 
 8
 Young and Tamez advance theories that do not find support in either the evidence or the law. A multiple conspiracies instruction was thus unnecessary in this case. Taren-Palma, 997 F.2d at 530.
 
 II. The Admission of Recorded Conversations
 
 9
 Tamez appeals the district court's admission of four consensually recorded conversations against him. We generally review for clear error findings of fact with respect to the foundational requirements for admission of co-conspirator statements. United States v. Paris, 827 F.2d 395, 399 (9th Cir.1987). However, because Tamez did not object to the admission of any of these tapes at trial, we review the admissibility of this evidence for plain error. United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993), cert. denied, 114 S.Ct. 1120 (1994).
 
 
 10
 Three of the tapes to which Tamez now objects are recorded conversations between Tamez himself and Drake. As such, they were properly admitted as party admissions. Fed.R.Evid. 801(d)(2)(A); United States v. Holland, 880 F.2d 1091, 1093 n. 1. (9th Cir.1989).
 
 
 11
 The remaining tape was a conversation between Young and Drake. In addition, Tamez appeals the admission of Larsen's testimony that Drake had identified Tamez as his source of cocaine.
 
 
 12
 Both Young's and Drake's out-of-court statements were properly introduced against Tamez as co-conspirators' statements made during the course and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). Based on independent, non-hearsay testimony, the government established by a preponderance of the evidence the existence of the conspiracy and Tamez's connection to it. United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir.1987). Drake testified that he acted as a middleman and distributed kilogram quantities of cocaine which he acquired from Tamez to Larsen, Paulsen and Mariani.
 
 
 13
 Moreover, the hearsay statements were made in furtherance of the conspiracy. Drake revealed his source of cocaine to Larsen in order to keep Larsen abreast of the conspirators' activities and to ensure Larsen's continued interest in purchasing cocaine from Drake. See Paris, 827 F.2d at 400 (drug dealer's identification of source of cocaine was in furtherance of the conspiracy because it ensured customer's continued interest in purchasing cocaine from dealer's source). Similarly, Young spoke to Drake about the risk of receiving phone calls at home in order to alert Drake to the necessity of exercising caution and to keep Drake abreast of the co-conspirators' arrests. Moreover, Young may have mentioned Tamez's contacts in the Tri-Cities to allay Drake's fears. Crespo de Llano, 838 F.2d at 1017; Paris, 827 F.2d at 400.
 
 
 14
 Because the government satisfied all of the prerequisites for admission under Rule 801(d)(2)(E), we need not independently inquire into the reliability of these statements. Paris, 827 F.2d at 400-01; Crespo de Llano, 838 F.2d at 1017. Admission of the statements did not violate Tamez's Sixth Amendment right of confrontation. Bourjaily v. United States, 483 U.S. 171, 183 (1987).
 
 
 15
 III. The Replaying Of Audio Tapes During Deliberations
 
 
 16
 During deliberations, the jury twice requested to rehear tape-recorded conversations between Drake and Tamez, and Drake and Young. We review the district court's decision to replay the tape-recorded conversations for abuse of discretion. United States v. Felix-Rodriguez, 22 F.3d 964, 966 (9th Cir.1994).
 
 A. Undue Emphasis
 
 17
 As in Felix-Rodriguez, the secretly tape-recorded conversations were not the only evidence against either defendant. 22 F.3d at 966. In light of Larsen's and Drake's trial testimony, there was sufficient corroborating evidence against defendants that the replay of the tapes did not effectively repeat the government's entire case. Moreover, the judge supervised the replaying of the tapes in open court after giving both sides an opportunity to object. Under these circumstances, no undue emphasis occurred. Id.; United States v. Hernandez, 27 F.3d 1403, 1408 (9th Cir.1994), cert. denied, 115 S.Ct. 1147 (1995); United States v. Barker, 988 F.2d 77, 80 (9th Cir.1993).
 
 
 18
 Defendants' reliance on United States v. Binder, 769 F.2d 595, 601 (9th Cir.1985), is misplaced. Unlike Binder, there was a significant amount of evidence against defendants even without the audio tapes. Cf. Felix-Rodriguez, 22 F.3d at 966; United States v. Sacco, 869 F.2d 499, 502 (9th Cir.1989) (distinguishing Binder with regard to the quantum of other evidence against defendant). Further, the district court here replayed the audio tapes in their entirety--not in any abridged fashion. Finally, in Binder, we emphasized the uniqueness of videotape testimony in enabling the jury to observe the demeanor and to hear the testimony of the witness, and we specifically distinguished audio tapes on that basis. 769 F.2d at 601 n. 1. Thus, many of the concerns in Binder do not apply to the instant case, which involves the replaying of audio tapes previously admitted into evidence.
 
 
 19
 United States v. Hernandez, 27 F.3d 1403, 1408-09 (9th Cir.1994), is also inapposite. In contrast to Hernandez, the district court properly instructed the jury that the transcripts accompanying the tapes were not a substitute for the tapes themselves. The district court also admonished the jury to weigh all the evidence and not focus on any portion of the trial. Thus, the district court took sufficient precautions to avoid undue emphasis or other prejudice. United States v. Lujan, 936 F.2d 406, 412 (9th Cir.1991).
 
 
 20
 B. The Absence of Tamez's Counsel During the First Replay
 
 
 21
 Although Tamez's counsel was notified of the jury's first request to rehear tapes, he indicated that he was unable to appear when the court addressed the issue. Assuming that Tamez did not waive his right to have his counsel present at the first replay, Tamez suffered no harm from his attorney's absence. Tamez and his attorney were both present when the court originally admitted the taped conversations into evidence. Before the first replay, Young's counsel objected vehemently based on Hernandez and Binder--the only two cases on which Tamez now relies on appeal. The court gave proper cautionary instructions and collected the transcripts from the jurors before they returned to deliberate. The presence of Tamez's counsel would not have affected the outcome, and any error was harmless beyond a reasonable doubt. Felix-Rodriguez, 22 F.3d at 967-68.
 
 IV. Sufficiency of the Evidence
 
 22
 Tamez contends that the government failed to prove that he was a member of the charged conspiracy. Because Tamez failed to renew his motion for judgment of acquittal at the close of his case, he effectively waived his objection to the sufficiency of the evidence. United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). We review the denial of a nonrenewed motion for acquittal for plain error or to prevent a manifest miscarriage of justice. Id.
 
 
 23
 As discussed above, the evidence established a single conspiracy of suppliers, distributors, and subdistributors all advancing the common goal of distributing cocaine for profit. There was direct evidence of Tamez's knowing connection to the conspiracy. Cf. United States v. Cuevas, 847 F.2d 1417, 1422-23 (9th Cir.1988) (only slight connection necessary to convict defendant of knowing participation in conspiracy), cert. denied, 489 U.S. 1012 (1989). We find no plain error, and thus, we affirm the district court's determination of the sufficiency of the evidence of Tamez's membership in the charged conspiracy.
 
 
 24
 V. Criminal Acts Outside the Limitations Period.
 
 
 25
 Drake testified at trial that he acted as Tamez's middleman beginning in 1987. Tamez contends that the district court erred in admitting evidence of these early cocaine transactions because they occurred beyond the five-year statute of limitations. 18 U.S.C. § 3282.
 
 
 26
 Tamez's argument misapprehends the purpose of the statute of limitations. The Second Superseding Indictment in this case was returned on October 18, 1994. The government proved that the conspiracy remained in existence after October 18, 1989; Drake testified to receiving cocaine from Tamez at least once in 1991, twice in 1993, and once in 1994. Thus, the statute of limitations did not bar the government from bringing this action. Grunewald v. United States, 353 U.S. 391, 396-97 (1957).[2]
 
 
 27
 The statute of limitations serves no purpose beyond this function. It does not bar the introduction of Tamez's 1987 drug transactions even though they occurred outside the limitations period. United States v. Baker, 10 F.3d 1374, 1410 (9th Cir.1993) (citing United States v. Musacchio, 968 F.2d 782 (9th Cir.1991)), cert. denied, 115 S.Ct. 330 (1994). Tamez's attempt "to convert the statute of limitations from a procedural rule that requires the bringing of a complaint within a certain time after the completion of a crime to a rule that restricts the introduction of evidence" is rejected. Musacchio, 968 F.2d at 790.
 
 VI. Drug Quantity
 
 28
 We review the district court's determination whether a particular item of evidence is sufficiently reliable to be considered at sentencing for abuse of discretion. United States v. Pinto, 48 F.3d 384, 389 (9th Cir.), cert. denied, 116 S.Ct. 125 (1995). We review the district court's factual findings of drug quantity for clear error. United States v. Vought, 69 F.3d 1498, 1503 (9th Cir.1995).
 
 
 29
 In written objections to the presentence investigation report, Tamez asserted that he was at most responsible for conspiring to transfer two--not five--kilograms of cocaine. In compliance with Fed.R.Crim.P. 32(c)(3)(D), the district court made findings of fact concerning the disputed drug quantity. United States v. Sustaita, 1 F.3d 950, 952-53 (9th Cir.1993). We perceive no clear error in the district court's finding that Tamez was legally accountable for the delivery of over five kilograms of cocaine.
 
 
 30
 Tamez further contends that the district court improperly relied on hearsay testimony to make its quantity determination. However, Tamez fails to identify any particular hearsay statements on which the district court allegedly relied. To the contrary, Drake's trial testimony established all of the transactions that factored into the district court's quantity calculation. This case is thus distinguishable from United States v. Huckins, 53 F.3d 276, 279 (9th Cir.1995), in which the hearsay statements of Huckins's accomplice were not made under oath, nor at trial where he could be cross-examined. Id. The district court did not abuse its discretion in relying on Drake's testimony, which was given under oath and subject to cross-examination, for purposes of determining the drug quantity. Vought, 69 F.3d at 1503.
 
 VII. Ineffective Assistance of Counsel
 
 31
 Tamez contends that he was denied effective assistance of counsel by his trial attorney's failure to: (1) call a particular witness, (2) file any pretrial motions, (3) ask any questions during voir dire, and (4) renew Tamez's motion for acquittal at the close of evidence.
 
 
 32
 We generally do not review challenges to the effectiveness of defense counsel on direct appeal. United States v. Laughlin, 933 F.2d 786, 788 (9th Cir.1991). The instant case illustrates why challenge by way of a habeas corpus proceeding is preferable--because it permits development of the record as to "what counsel did, why it was done, and what, if any prejudice resulted." Id. at 788-89.
 
 
 33
 Although James H. Maclean has submitted an affidavit indicating that he would have testified favorably to Tamez's defense, whether the failure to call Maclean as a witness resulted in ineffective assistance of counsel is more of a factual than legal inquiry. Cf. United States v. Johnson, 820 F.2d 1065, 1074 (9th Cir.1987) (issues of fact more properly raised in a § 2255 proceeding than on direct appeal). Tamez's counsel has not had an opportunity to explain his actions. Cf. Laughlin, 933 F.2d at 789. We cannot gauge the impact of Maclean's testimony on Tamez's defense without evidence of why his attorney did not call Maclean. We decline to engage in the "perilous process of second-guessing" Tamez's counsel's actions on an incomplete record. United States v. Birges, 723 F.2d 666, 670 (9th Cir.) (quoting People v. Pope, 23 Cal.3d 412, 426 (1979)), cert. denied, 466 U.S. 943, and cert. denied, 469 U.S. 863 (1984).
 
 
 34
 The record is also insufficiently developed with regard to Tamez's remaining claims of deficient performance. For example, Tamez fails to identify any potentially meritorious pretrial motion that his attorney neglected to bring. Cf. United States v. Molina, 934 F.2d 1440, 1447 (9th Cir.1991) (".. it is not professionally unreasonable to decide not to file a motion ... clearly lacking in merit.") It is equally unclear from the record how Tamez's counsel's failure to ask any particular question during voir dire prejudiced Tamez.
 
 
 35
 Tamez's reliance on Sanders v. Ratelle, 21 F.3d 1446 (9th Cir.1994), is misplaced. Sanders involved a habeas corpus petition--not a direct appeal. Id. at 1448. Unlike the instant case, the fully developed record in Sanders documented in detail trial counsel's deficient performance. Id. at 1456-60.
 
 
 36
 United States v. Swanson, 943 F.2d 1070 (9th Cir.1991), is also distinguishable. We decided the effectiveness of counsel on direct appeal because Swanson's claim was based entirely on the reported statements made by his trial counsel during final argument. Id. at 1072. Unlike Swanson, assessment of Tamez's ineffective assistance of counsel claim turns on evidence outside the trial record. Thus, we deny Tamez's ineffective assistance of counsel claim without prejudice to its being pursued in a proceeding under 28 U.S.C. § 2255.
 
 CONCLUSION
 
 37
 In a separate, published opinion, we reverse the district court's refusal to conduct an evidentiary hearing whether the government intentionally distorted the fact-finding process by selectively granting immunity or favorable plea agreements to six prosecution witnesses while denying immunity for a potential defense witness, and remand on that issue. In all other respects, the convictions and sentences are AFFIRMED.
 
 
 
 *
 The panel unanimously finds these cases suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 In United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989), we reviewed de novo whether the evidence was sufficient to support a multiple conspiracies instruction. However, this apparent split of circuit authority on the proper standard of review does not affect the outcome of this case. Even under the more stringent de novo standard, we conclude that the district court did not err in rejecting the proffered multiple conspiracies instruction
 
 
 [2]
 Grunewald held that "where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the three [subsequently amended to five] years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period." 353 U.S. at 396-97 (emphasis added). The Supreme Court has recently held that in order to establish a conspiracy under 21 U.S.C. § 846, the government need not prove any overt acts in furtherance of the conspiracy. United States v. Shabani, 115 S.Ct. 382, 385 (1994). Even assuming that Grunewald 's requirement of at least one overt act within the limitations period applies to the instant case in spite of Shabani, the government has proven overt acts well within the limitations period