**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANTHONY MARCOS CHADWELL,
*Defendant-Appellant*.

No. 14-30028

D.C. No.
1:13-cr-00014-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Senior District Judge, Presiding

Argued and Submitted
July 8, 2015—Portland, Oregon

Filed August 19, 2015

Before: N. Randy Smith and John B. Owens, Circuit
Judges, and William Q. Hayes,* District Judge.

Opinion by Judge Hayes

---

* The Honorable William Q. Hayes, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a jury conviction and sentence for being in possession of firearms while subject to a court order.

The panel held that the district court did not abuse its discretion or violate defendant's right to be present at all stages of the trial under Fed. R. Crim. P. 43(a) when it permitted the jury to view a properly admitted video exhibit in the jury room during deliberations.

The panel also held that the district court did not err in applying a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing any firearm in connection with another felony offense.

### COUNSEL

Cammi J. Woodward (argued), Woodward Law Firm, PLLC, Billings, Montana, for Defendant-Appellant.

John D. Sullivan (argued), Assistant United States Attorney, and Michael W. Cotter, United States Attorney, Billings, Montana, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

HAYES, District Judge:

Appellant Anthony Marcos Chadwell appeals his jury conviction and sentence for being in possession of firearms while subject to a court order in violation of 18 U.S.C. § 922(g)(8). Chadwell contends that the district court (a) abused its discretion and violated his right to be present at all stages of the trial when it permitted the jury to review a properly admitted video exhibit in the jury room during deliberations, and (b) erred in applying the four-level enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(b)(6)(B) for using or possessing any firearm in connection with another felony offense to calculate his advisory guideline range. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. Offense Conduct

On August 26, 2012, Billings Police Department Officer James Ward pulled over a vehicle driven by Chadwell. The video recording system in Officer Ward's patrol vehicle activated when he turned on his top lights for the traffic stop. Chadwell immediately informed Officer Ward that he was a habitual traffic offender. Officer Ward verified the information with dispatch and informed Chadwell he would be placed under arrest as a habitual traffic offender. Chadwell exited the vehicle and immediately closed the door. Officer Ward placed Chadwell in handcuffs. When Officer Ward asked Chadwell if he would find anything in the vehicle, Chadwell became agitated. Chadwell started to yell

at the passenger, Brandon Robinson, to get out of the vehicle. Robinson exited the vehicle, locked the doors, and sat on the trunk. Officer Ward asked Chadwell whether he had proof of insurance in the glove box. Chadwell responded, "No, you're not getting in there. So just give me a no-insurance."

After Chadwell was taken to jail, officers searched the vehicle. Officer Ward found a bottle that contained two plastic sandwich baggies of cocaine on the driver's side floorboard, a loaded .25 caliber semiautomatic pistol with a round in the chamber between the center seats in the front of the vehicle, and an unloaded .22 caliber semiautomatic pistol in the glove box. All of these events were video recorded.

Chadwell was charged in an indictment with being in possession of firearms and ammunition while subject to a court order in violation of 18 U.S.C. § 922(g)(8).

## B. Trial Proceedings

At the pretrial conference, Chadwell stipulated to the admission of the two firearms and the ammunition found in the vehicle, a nineteen-minute portion of the video recorded from Officer Ward's vehicle,[1] and the certified order of protection prohibiting Chadwell from possessing a firearm.

At trial, the district court permitted the government to publish the nineteen-minute video exhibit to the jury during the testimony of Officer Ward. The government rested on the first day of trial and Chadwell did not present any evidence.

---

[1] The entire video lasted approximately an hour. The shortened video exhibit, admitted by stipulation of the parties, did not include the search of the vehicle or the discovery of the cocaine and guns.

The court submitted the case to the jury for deliberations at approximately 3:45 p.m.

Shortly before 5:00 p.m., the court reconvened in the courtroom outside the presence of the jury with all counsel and Chadwell present. The district court informed the parties that the jury had sent out a question stating, "How do we watch the DVD?" The district court confirmed with the parties that the nineteen-minute video exhibit had been played in full in open court and that the video exhibit was in the jury room.

The jury was excused for the evening and returned the next morning. When court reconvened, the district court informed the parties that a television with a built-in video player was set up in the jury room. Defense counsel objected on the grounds that the trial was short and the procedure unduly emphasized one piece of the evidence. The court overruled the defense objection. The court reconvened with the jury present. The court informed the jury that a television with a built-in video player was available in the jury room to play the video. The court cautioned the jury to give full consideration to all of the testimony and not to focus on any one particular piece of evidence. The jury returned to the jury room to deliberate, and subsequently returned a verdict of guilty.

## C. Sentencing

Chadwell objected to the application of the four-level enhancement under U.S.S.G § 2K2.1(b)(6)(B) for the use or possession of a firearm in connection with another felony, which was recommended in the presentence report. At the sentencing hearing, the government presented the testimony

of Officer Ward and Detective Kenneth Tuss.  Officer Ward testified regarding the location of the drugs and the guns in the vehicle that Chadwell was driving at the time of the traffic stop.  Detective Tuss testified regarding a controlled sale of cocaine between a confidential informant and Chadwell on August 15, 2012, eleven days prior to the offense conduct. Detective Tuss testified that Chadwell and Robinson sold cocaine to a confidential informant in an alley after meeting up at the house of Robinson's grandmother.

After hearing the evidence and the arguments of counsel, the district court found the government had proven by more than a preponderance of evidence that Chadwell had the gun in his possession in connection with a specifically contemplated felony—the distribution, sale, or use of cocaine—and that Chadwell formed a firm intent to have the gun for protection or to embolden himself or others in either taking or not paying for the cocaine.  The district court relied specifically upon evidence of the August 15 controlled buy of cocaine, Chadwell's obstreperous behavior at the traffic stop, and the close proximity of the firearm and the drugs in the vehicle.  The district court found: "[T]he facts very clearly establish . . . that Mr. Robinson and Mr. Chadwell were [i]n the business of selling drugs, and that the firearms were there in connection with the drugs."  The district court concluded that the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for the use or possession of a firearm in connection with another felony applied in this case, and sentenced Chadwell to 48 months of incarceration followed by three years of supervised release.

## STANDARD OF REVIEW

We review for abuse of discretion the district court's decision to allow the jury to take exhibits into the jury room. *See United States v. Abonce-Barrera*, 257 F.3d 959, 963 (9th Cir. 2001); *see also United States v. DeCoito*, 764 F.2d 690, 695 (9th Cir. 1985).

"We review 'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [the] case for abuse of discretion, and the district court's factual findings for clear error.'" *United States v. Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010) (alteration in original) (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)).

## ANALYSIS

### A. Permitting the Jury to Review the Video in the Jury Room

Chadwell argues that permitting the jury to review the video exhibit alone in the jury room (a) was an abuse of the district court's discretion and (b) violated his right to be present at all stages of trial under Federal Rule of Criminal Procedure 43(a). We hold that the district court did not abuse its discretion in sending the video exhibit to the jury room for replay and that a defendant's right to be present at all stages of the trial under Federal Rule of Criminal Procedure 43(a) does not extend to a jury's private review of evidence in the jury room.

### 1.  Sending Exhibits to the Jury Room

The decision to send properly admitted exhibits to the jury room during deliberations is within the discretion of the trial court. *DeCoito*, 764 F.2d at 695. Jurors generally may examine all or part of any exhibit received into evidence and determine the weight to give that evidence during deliberations in the privacy of the jury room. *Id.* In this case, the district court had discretion to send the video recording to the jury room during deliberations and to provide the jury with the technology to view this properly admitted video exhibit in the privacy of the jury room. The district court did not abuse its discretion by allowing the jury to examine the video exhibit during deliberations in the same private manner that the jury is entitled to view paper exhibits, photographs, and physical exhibits. *See United States v. Cuozzo*, 962 F.2d 945, 953 (9th Cir. 1992) (holding that properly admitted "audio tapes" can be "made available to [the] jury for review like all other evidentiary exhibits").[2]

---

[2] Other circuits allow tape players to go into the jury room to replay properly admitted evidence. *See, e.g.*, *United States v. Monserrate-Valentin*, 729 F.3d 31, 59 (1st Cir. 2013) ("We fail to see how . . . recordings are any different from the other types of documentary evidence that are routinely reviewed by jurors during their deliberations."); *United States v. Plato*, 629 F.3d 646, 652 (7th Cir. 2010) ("We have previously approved of a district court's decision to send tape recordings and a tape player into the jury room during deliberations . . . ."); *United States v. Rose*, 522 F.3d 710, 715 (6th Cir. 2008) ("As we have said in response to objections to the presence of tape players in the jury room, an audio exhibit should not be relegated to muteness because it can be perused only through the use of a tape player." (internal quotation marks omitted)); *United States v. Sobamowo*, 892 F.2d 90, 97 (D.C. Cir. 1989) (R.B. Ginsburg, J.) ("Contrary to defendants' contentions, the tape replaying was not a stage of trial implicating the confrontation clause or Rule 43(a)."); *United States v. Zepeda-Santana*, 569 F.2d 1386, 1391 (5th Cir.

As the district court in this case correctly concluded, permitting a jury to view properly admitted exhibits is "quite different" from permitting the jury to hear a readback of actual trial testimony. Trial testimony may be read back to a jury at the district court's discretion, but only where the "particular facts and circumstances of [a] case" favor a readback and sufficient protections are in place to avoid undue emphasis on any portion of the testimony. *United States v. Hernandez*, 27 F.3d 1403, 1408 (9th Cir. 1994). *Compare id.* at 1408–09 (holding that the district court abused its discretion in permitting the jury to take a transcript into the jury room during deliberations when the court knew the jury intended to focus its verdict on a specific portion of a transcript and did not instruct the jury not to emphasize that transcript or otherwise provide protective instructions), *with United States v. Lujan*, 936 F.2d 406, 411–12 (9th Cir. 1991) (per curiam) (holding that the district court did not abuse its discretion by permitting the jury to take a copy of trial transcript into the jury room during deliberations when the district court took multiple precautions to avoid undue emphasis on the transcript).

We stated our concerns about permitting trial testimony readback during jury deliberations in *United States v. Sacco*, 869 F.2d 499, 502 (9th Cir. 1989): "[I]n the privacy of the

1978) ("It is within the trial court's discretion to decide whether evidentiary exhibits [taped conversations] should accompany the jury into the jury room."); *United States v. Williams*, 241 F. App'x 681, 684 (11th Cir. 2007) ("A tape recording is just another piece of real evidence." (internal quotation marks omitted)); *United States v. Graulich*, 35 F.3d 574, at *8 (10th Cir. 1994) (unpublished table decision) ("We hold that the tapes were properly admitted in evidence and that the district court did not abuse its discretion in thereafter allowing the tapes to go to the jury room during deliberations.").

jury room, a jury, unsupervised by the judge, might repeatedly replay crucial moments of testimony before reaching a guilty verdict." In this case, the video was a properly admitted exhibit which was sent to the jury room along with the other exhibits in the case—not trial testimony. *See Cuozzo*, 962 F.2d at 953 ("The government's audio tapes were not testimony . . . ."). The concern for avoiding undue emphasis on particular trial *testimony* did not limit the discretion of the district court to send the video *exhibit* to the jury room "for review like all other evidentiary exhibits." *Id*.

## 2. Federal Rule of Criminal Procedure 43(a)

Our case law concerning the defendant's right under Federal Rule of Criminal Procedure 43(a)(2) to be personally present at "every trial stage" is also inapposite. We have consistently held that the replay of audio exhibits for the jury during deliberations in the courtroom with outsiders present is properly viewed as a stage of the trial at which the presence of the defendant is required. *See United States v. Felix-Rodriguez*, 22 F.3d 964, 966–67 (9th Cir. 1994) (holding that the replay of taped conversations in the courtroom with the judge, his law clerk, the court clerk, and the court reporter present, but not the defendant, violated Rule 43(a)(2)); *United States v. Brown*, 832 F.2d 128, 129–30 (9th Cir. 1987) (holding that the replay of court reporter's tape recording of a prior proceeding in the courtroom with the case agent and the court clerk present, but not the defendant, violated Rule 43(a)(2)); *United States v. Kupau*, 781 F.2d 740, 743 (9th Cir. 1986) (holding that the replay of taped conversations in the courtroom with an FBI agent present, but not the defendant, violated Rule 43(a)(2)).

In each of these cases, we concluded that the procedure used by the district court violated the defendant's rights under Rule 43(a) because outsiders were present. In *Kupau*, we expressed "serious concerns about . . . a risk that someone associated with the prosecution, while alone with the jury after submission, could, in some fashion, influence its deliberations." 781 F.2d at 742; *see also Brown*, 832 F.2d at 130 ("Any number of prejudicial events might have taken place when the case agent replayed the tape for the jury. . . . Such contact could be very subtle, such as a nod at a significant portion of the tape. It might have been unintended, or even unnoticed by the case agent himself."); *Felix-Rodriguez*, 22 F.3d at 967–68 (holding that error was harmless because the "jurors were not exposed to extraneous matters"). In this case, the district court provided the jury with the technology to view the video exhibit in the privacy of the jury room with no outsiders present. Unlike the cases cited above, this procedure raised no concern that the deliberations would be tainted by outside influences.

Chadwell's reliance on *United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996), *amended by* 140 F.3d 1244 (9th Cir. 1998), is similarly unavailing. In *Noushfar*, we held that Rule 43(a) was violated when the district court allowed the jury to listen in the privacy of the jury room to audio tapes that had never been presented in open court. Unlike the audio tapes in *Noushfar*, the video exhibit in this case was played in its entirety in open court, and "presented and tested in front of the jury, judge and defendant." *Id.*

The district court thus did not abuse its discretion when it sent the properly admitted video exhibit into the jury room or when it provided the jury with the technology to view the video exhibit during deliberations in the privacy of the jury

room. Nor did the procedure used by the district court violate Chadwell's right to be present at every stage of the trial under Rule 43(a).

## B. Application of U.S.S.G. § 2K2.1(b)(6)(B)

U.S.S.G. § 2K2.1(b)(6)(B) states in relevant part: "If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels."[3]    The relevant application note states that "[s]ubsection (b)(6)(B) . . . appl[ies] . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs . . . .    In these cases, application of subsection[] (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." U.S.S.G. § 2K2.1 cmt. n. 14(B).    "The government bears the burden of producing sufficient evidence that the defendant intended to use or possessed the firearm in connection with a specifically contemplated felony." *United States v. Noster*, 590 F.3d 624, 635 (9th Cir. 2009).

The facts of this case are materially indistinguishable from those of *United States v. Polanco*, 93 F.3d 555 (9th Cir. 1996).    In *Polanco*, the defendant "was observed selling

---

[3] "'Another felony offense,' for purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.14(C).

marijuana at the intersection of Pico Boulevard and Hoover Street, not far from his car, which was parked at the corner of that intersection. During the time he was selling marijuana, [he] occasionally returned to his parked car." *Id.* at 567. Following his arrest, the defendant's gun was found "loaded with ammunition and wedged between the driver's seat and the console of his car." *Id.* Observing that "[t]he presence of the gun in [the defendant's] car potentially emboldened him to undertake his illicit drug sales," this court held that the government had "adduced sufficient evidence to prove by a preponderance of evidence" that an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was warranted. *Id.*

In this case, a gun was also found near the console of the defendant's car and there was evidence the defendant was selling drugs out of his car—baggies of drugs were found inches away from the gun. The district court also cited several other pieces of evidence establishing that the two guns found in Chadwell's car "emboldened him to undertake his illicit drug sales": (1) the August 15 controlled buy of cocaine involving Chadwell and Robinson, which supported the conclusion that Chadwell and Robinson worked closely together in the distribution of drugs; (2) the fact that Chadwell was under a restraining order for threats of violence; and (3) the fact that Chadwell made every effort to keep the police from getting into the vehicle or searching the vehicle during the traffic stop that led to the offense of conviction.

Taking all of this evidence into consideration, there was ample support in the record for the district court's conclusion. The district court did not abuse its discretion when it applied the four-level enhancement under U.S.S.G § 2K2.1(b)(6)(B).

## CONCLUSION

The district court was within its discretion to send the properly admitted video evidence into the jury room and to provide the jury with the technology to view the video evidence during deliberations in the privacy of the jury room. The procedure used by the district court did not violate Chadwell's right to be present at every stage of the trial under Rule 43(a). The district court did not abuse its discretion when it applied the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

**AFFIRMED.**