# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellant,*

v.

JACQUAN LEE RICHARD,
         *Defendant-Appellee.*

No. 06-10377

D.C. No.
CR-04-00477-JCM

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JACQUAN LEE RICHARD,
         *Defendant-Appellant.*

No. 06-10380

D.C. No.
CR-04-00477-JCM/
PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
August 13, 2007—San Francisco, California

Filed October 12, 2007

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge O'Scannlain

13857

**COUNSEL**

Robert L. Ellman (argued) and Brian J. Quarles, Assistant United States Attorneys, United States Attorney for the District of Nevada, Las Vegas, Nevada, for the plaintiff-appellant (No. 06-10377), plaintiff-appellee (No. 06-10380).

Anne R. Traum, Assistant Federal Public Defender, Federal Public Defender, Las Vegas, Nevada, for the defendant-appellee (06-10377), defendant-appellant (No. 06-10380).

## OPINION

HAWKINS, Circuit Judge:

Jacquan Richard ("Richard") appeals his jury conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). We have jurisdiction under 28 U.S.C. § 1291, and—because we conclude the district court abused its discretion by permitting the jury to rehear only a portion of a key witness's testimony without taking necessary precautions to ensure the jury did not unduly emphasize the testimony—we vacate Richard's conviction and remand.

## I.

Richard was a backseat passenger in a vehicle lawfully stopped by Las Vegas Police Officer Mark Prager ("Officer Prager") for displaying defective registration tags. Officer Prager requested identification from the vehicle's four occupants and was able to accurately identify three: (1) the vehicle's owner and driver, David Martin ("Martin"); (2) backseat passenger Michael Schneider ("Schneider"); and (3) front seat passenger Nikole Reeder ("Reeder"). Officer Prager was unable to immediately identify Richard because Richard did not have physical identification and the information he provided to Officer Prager could not be confirmed via a local, national, and Department of Motor Vehicles record check.

After issuing two vehicle citations to Martin, Officer Prager released him, along with Reeder and Schneider, permitting them to enter an adjacent casino, but detained Richard in order to ascertain his identity. While detained, Richard volunteered that Martin was a pimp who was pandering Reeder, prompting Officer Prager to request vice backup assistance.[1]

---

[1] The government notes that the only "evidence" that Richard informed the police of Martin and Reeder's alleged activities is contained in a police report, which was not admitted as evidence at trial, and accordingly should

Although not fully developed in the record, it appears that support officers subsequently retrieved Martin, Reeder, and Schneider from the casino for questioning. During this follow-up questioning, Schneider informed Detective Aaron Stanton ("Detective Stanton") that there was a gun in Martin's vehicle near the area where Richard had been seated. Detective Stanton later learned that the gun allegedly belonged to Richard, though it is unclear from the record how he obtained this information.

Richard, Martin, and Reeder were then arrested on charges unrelated to the original traffic stop,[2] Schneider was let go, and Martin's vehicle was impounded. No gun was discovered during a routine impound inventory search. However, Schneider later provided the police with additional information concerning the gun, stating that it was located *inside* the rear seat of Martin's vehicle. Schneider then accompanied Detective Stanton to the impound lot, where he pointed to the gun's location, evidenced by a small bulge in the backseat. Based on this information, Detective Stanton obtained a search warrant and searched the vehicle the following day, locating the gun inside the rear passenger seat. Detective Stanton subsequently interviewed Richard at the Clark County Detention Center. During this interview, Richard repeatedly denied ownership

_____

not be considered on appeal. However, Richard appeals the district court's failure to hold an evidentiary hearing on his motion to suppress evidence, thus denying him the opportunity to fully develop the sequence of events and presumably introduce this report. Furthermore, Richard's accusations as contained in the report were acknowledged by the government in its response to Richard's motion, and clearly considered by the magistrate judge in reaching her decision, and therefore may properly be considered on appeal. In any event, in light of our narrow holding, we need not ascertain the precise sequence of events.

[2]Martin and Reeder were apparently arrested for charges relating to pandering and prostitution and Richard, after his positive identification and a records check, for "[i]ntimidating Reeder" and a probation violation.

or possession of the gun, but acknowledged that he may have previously touched or held it.[3]

At trial, Reeder was the only witness to testify to actually seeing the gun in Richard's possession. At the outset of her testimony, Reeder described Officer Prager's stop of Martin's vehicle, acknowledged that Martin was her boyfriend at the time, and described her location and that of the other passengers in Martin's vehicle. When asked, however, Reeder had significant, ongoing difficulty identifying Richard in the courtroom as a passenger in Martin's vehicle. She failed to do so on four successive attempts over the course of several minutes, despite being prompted with a photograph of Richard she had previously identified as the backseat passenger who possessed the gun and specifically directed to look at the defense table. On the fifth attempt, after additional prompting and direction, Reeder finally acknowledged that Richard looked like the passenger in Martin's vehicle, explaining that he had apparently gained weight and changed his hairstyle.

Reeder then testified that when Officer Prager activated his lights to stop Martin's vehicle, Richard exclaimed that "he had to run, he had warrants, and a gun" and that she saw him

---

[3]Because we reverse Richard's conviction on other grounds, we do not address Richard's contention on appeal that statements made during his interview with Detective Stanton were the unconstitutional result of a deliberate two-step interrogation. *Missouri v. Seibert*, 542 U.S. 600, 608-17 (2004).

We likewise decline to address the merits of Richard's Fourth Amendment challenge to the evidence seized from Martin's vehicle and the statements Richard made during his roadside detention. *See United States v. Pulliam*, 405 F.3d 782 (9th Cir. 2005). If a new trial is held, Richard is free to renew his challenge to this evidence and the district court will have the opportunity to more fully examine the applicable law, relevant facts, and precise sequence of events in light of intervening circuit and Supreme Court authority. *See Brendlin v. California*, 127 S. Ct. 2400 (2007); *United States v. Diaz-Castaneda*, No. 06-30047, 2007 WL 2044244 (9th Cir. July 18, 2007); *see also United States v. Henderson*, 463 F.3d 27 (1st Cir. 2006).

pull a gun from his pants and place it under or around the backseat. On cross-examination, defense counsel questioned Reeder about the relatively brief period of time she observed the gun and her ability to describe the gun in detail. In addition, defense counsel inquired further into Reeder's relationship with Martin, the relationships (or lack thereof) between the vehicle's other occupants, and Schneider's state of inebriation at the time of the stop.[4]

In the course of its deliberations, the jury made several requests,[5] including to "have Nikole Reeder's testimony and cross-examination." In response, the judge explained that there was no then-available transcript of the testimony and advised the jury:

> If you want to hear a readback of somebody's testimony you have to let us know what part you want to hear, and then I'll have the court reporter find that in her notes, and then we will bring you back into court and read that back to you.

The court also noted that there was an audiotape, but informed the jury that it would take some time to cue up. The jury was advised to "let [the court] know what portion" of testimony it wanted to hear and temporarily excused. Upon its return, the jury stated that it "would like to either hear back the tape or have read . . . Ms. Reeder's testimony from after

---

[4]In addition to Reeder's testimony, the jury heard testimony from Officer Prager, Detective Stanton, and Randall McPhail, a Las Vegas Metropolitan Police Department Senior Crime Scene Analyst. The jury also heard Detective Stanton's taped interview with Richard and viewed various photographs of Martin's vehicle and the gun.

[5]For example, the jury requested clarification of: (1) when and from whom Detective Stanton learned about the gun; (2) the sequence of events relating to the initial release of Martin, Reeder, and Schneider, and the subsequent arrests; (3) how Richard could know a gun could be placed inside the backseat of Martin's vehicle; and (4) whether Schneider was in fact drunk.

the side bar until right after — or right toward the beginning of cross-examination. . . . [R]ight around the time she was being asked to identify the defendant."

Outside the jury's presence, and after having learned for the first time of the jury's intended focus on Reeder's testimony in support of the government's case, Richard objected to playing only a portion of Reeder's testimony and moved to have her testimony replayed in its entirety. The judge denied the motion as untimely, expressing concern that reversing course at that point and requiring the jury to hear all of Reeder's testimony would make him "look like an idiot." He also rejected Richard's argument that, because Reeder's credibility was at issue, it was important for the jury to hear her entire testimony, and stated that he would also overrule the objection on the merits because it was not his "place" to instruct the jury that it was required to hear "the entire testimony of everybody, or of Ms. Reeder, or anyone else."

After rehearing a portion of Reeder's testimony in open court, the jury resumed its deliberations, returning one hour later with a guilty verdict. At sentencing, the district court concluded that Richard did not qualify as an "armed career criminal," and sentenced Richard to 120 months imprisonment—the statutory maximum for violation of 18 U.S.C. § 922(g)(1). *See id.* §§ 924(a)(2), (e)(1). Richard now appeals from his judgment of conviction and the government appeals the failure to find Richard to be an armed career criminal for sentencing purposes.[6]

## II.

We review a district court's decision to replay (or reread) witness testimony during jury deliberations for an abuse of dis-

---

[6]Because we reverse Richard's conviction, we need not—and do not—address the government's related appeal (No. 06-10377) of Richard's sentence.

cretion.[7] *United States v. Binder*, 769 F.2d 595, 600 (9th Cir. 1985), *overruled in part on other grounds by United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997). "The [district court's] determination to allow a rereading or rehearing of testimony must be based on [the] particular facts and circumstances of the case" and "[u]ndue emphasis of particular testimony should not be permitted." *Id.* "Under the abuse of discretion standard, we will not reverse unless we have a definite and firm conviction that the district court committed a clear error in judgment." *United States v. Hernandez*, 27 F.3d 1403, 1408 (9th Cir. 1994).

## III.

**[1]** Richard contends that the audiotape replay of selected portions of Reeder's testimony comprising the core of the government's case unduly emphasized this testimony. We agree. Although the district court is generally afforded a great deal of discretion in determining whether testimony should be replayed (or reread) in a particular case, *United States v. Sacco*, 869 F.2d 499, 501 (9th Cir. 1989), that discretion is not boundless. Although there is no panacea for the inherent risk of undue emphasis resulting from the playback (or rereading) of witness testimony during jury deliberations, certain precautions must generally be taken to avoid that risk. *See id.* at 501-03; *Hernandez*, 27 F.3d at 1408.

**[2]** For example, we have consistently noted that it is preferable to have the testimony reheard (or reread) in open court with all parties present. *See, e.g.*, *Hernandez*, 27 F.3d at 1408 ("[T]he preferred method of rehearing testimony is in open court, under the supervision of the court, with the defendant and attorneys present."); *Binder*, 769 F.2d at 601 n.1 ("If it is

---

[7]The government conceded at oral argument that, contrary to the district court's conclusion, Richard's objection to the abridged playback of Reeder's testimony was timely. Therefore, the district court's decision is not subject to plain error review.

appropriate to let the jury hear the testimony of a witness a second time at all, the preferred procedure would require the preparation of a transcript . . . and a rereading of that testimony to the jury in the courtroom with all parties present.").

**[3]** In addition, the jury should ordinarily be provided with the witness's *entire* testimony—i.e., direct *and* cross-examination, and should be admonished to weigh all the evidence and not focus on any portion of the trial. *See Hernandez*, 27 F.3d at 1408-09. Such precautions are especially important where the jury has exhibited an "obvious intent to emphasize a specific portion of [testimony]." *See id.* at 1409. Finally, in deciding whether to allow testimony to be replayed, we have noted that a district court should consider the "quantum of other evidence against the defendant" and "the importance of the [testimony to be replayed] in relation to other evidence." *Sacco*, 869 F.2d at 502.

**[4]** In Richard's case, though the district court replayed Reeder's abridged testimony in open court, it took none of the additional precautions we have previously identified to ensure that the jury did not unduly emphasize the testimony. To the contrary, despite the jury's initial request to "have Nikole Reeder's testimony and cross-examination," the district court did not provide her entire testimony, but instead requested the jury to select the portion it wanted to hear. The portion replayed primarily consisted of the core of the government's case against Richard—i.e., Reeder's ultimate courtroom identification of Richard and testimony that he possessed the gun. Specifically, the replayed portion contained the following critical exchange:

> Q: What, if anything, did the defendant say when [the police activated their lights and sirens]?
>
> . . . .
>
> A: He said he had to run, he had warrants, and he had a gun.

. . . .

Q: Did you at any point turn around to see if, in fact, he had a gun?

A: Yes, your Honor — or yeah.

. . . .

Q: And what did you see when you turned around?

A: I seen the black part, the barrel of the gun.

. . . .

A: It was a handgun.

. . . .

A: He was pulling it from his pants part.

. . . .

Q: So he had it in his hand?

A: Yes.

Q: Did you see the defendant do anything with that gun?

A: He was putting it — I don't know whether it was under the seat, behind the seat, in the seat, but it was somewhere regarding the seat.

Notably, the excerpt omitted: (1) portions of Reeder's testimony that Martin, the vehicle's owner and driver, was her boyfriend at the time; (2) Reeder's extraordinary difficulty in

identifying the backseat passenger she claimed to have seen with the gun; and (3) Reeder's entire cross-examination.[8]

**[5]** The portion of Reeder's testimony replayed was especially damaging to Richard as she was the *only* witness—indeed, the only evidence—directly connecting Richard to the gun. Yet, despite the clearly one-sided nature of the portion to be replayed, the district court did not admonish the jury against unduly emphasizing the testimony or otherwise attempt to minimize the risk of undue emphasis. This failure constituted clear error, and we therefore conclude that the district court abused its discretion in permitting Richard's jury to rehear that portion of Reeder's testimony. *See Hernandez*, 27 F.3d at 1408.

An examination of our prior cases confronting this issue confirms our conclusion:

In *United States v. Sacco*, we held that the district court did not abuse its discretion in permitting a video replay of the deposition testimony of a prosecution witness. 869 F.2d at 500, 503. Although the testimony at issue in *Sacco* was video-taped, like the audiotape in Richard's case, it was played in open court with all parties present. *Id.* at 502. However, in contrast to Richard's case, the *Sacco* court required that *all* of the witness's testimony be replayed, *id.* at 501-02, whereas the district court here permitted the jury to rehear only a portion of Reeder's direct examination, excluding both direct and cross-examination that arguably undermined Reeder's credibility.

---

[8]Although the portion replayed did include Reeder's two additional unsuccessful attempts to identify Richard in the courtroom, as well as limited testimony about Reeder's relationship with Martin, the excerpt did not present a complete picture, in light of its critical inclusion of Reeder's ultimate identification of Richard and version of events supporting the government's theory, and omission of direct and cross-examination with the potential to impeach her credibility.

In *Sacco*, we further noted that "there was ample physical [and corroborative] evidence, aside from the videotape, of Sacco's criminal conduct" and "[r]eplay of the videotape did not, therefore, effectively repeat the entirety of the government's case." *Id.* at 502. In contrast, Reeder was the *only* witness to directly testify to Richard's possession of the gun—the only issue before the jury—and there was no physical evidence linking the gun to Richard. Thus, in all material respects, the portion of Reeder's testimony replayed did "effectively repeat the entirety of the government's case" against Richard. *See id.* Even worse, as noted above, the portion replayed contained *only* the core of the government's case against Richard, entirely omitting large portions of Reeder's testimony on both direct and cross-examination that may have impeached her credibility, thereby increasing the risk that the jury would unduly emphasize the portion replayed.

In *United States v. Lujan*, we similarly found no abuse of discretion in the provision of a trial transcript to the jury during its deliberations. 936 F.2d 406 (9th Cir. 1991). Like the reading of a provision of a witness's *entire* testimony in *Sacco*, the *Lujan* jury was provided with the *entire* trial transcript, greatly reducing the likelihood that it would unduly emphasize any particular portion. *Id.* at 411. In addition, the district court allowed counsel to note any inaccuracies in the transcript beforehand and expressly admonished the jury "to weigh all the evidence and not to use the transcript to focus on any portion of the trial." *Id.* at 412. Finally, the jury was instructed that the transcript was not authoritative and that the jurors' memories should prevail in their deliberations. *Id.* The district court took no similar precautions here.

Partial read-backs have rather consistently met with disfavor. We held in *United States v. Binder* that the trial court abused its discretion in allowing the abridged replay of testimony during jury deliberations, concluding that the "[f]ailure to replay the tape in its entirety may have placed an undue emphasis on the portion [replayed]." 769 F.2d at 601. As in

Richard's case, there was no physical evidence linking Binder to the crime charged and the government's case therefore rested primarily on the credibility and testimony of witnesses to the crime. *Id.* at 600-01. Accordingly, "[t]he replay [of key witness testimony] allowed the repetition of the government's case against Binder and may [therefore] have taken on inappropriate significance in the jury's deliberations."[9] *Id.* The *Binder* trial court, like the district court here, took no additional precautions to ameliorate the risk of undue emphasis.[10]

Even full read-backs, absent appropriate precautions, can prove problematic. *United States v. Hernandez* found an abuse of discretion where the district court provided the jury with a transcript of key witness testimony describing the suspect without taking the necessary precautions to ensure that the jury did not unduly emphasize the testimony. 27 F.3d at 1409. We concluded that the district court's "minimal protections"—utilizing a transcript as opposed to an audiotape and providing the jury with the witness's entire testimony— "were insufficient to prevent undue emphasis of [the witness's] testimony." *Id.* at 1408. We noted that Hernandez's jury had "clearly indicated . . . that its final decision turned on [the witness's] testimony, specifically his description of the suspect,"[11] and, in light of this "obvious intent to empha-

---

[9]Although the *Binder* court noted that the replay of videotaped testimony carries a particular risk of prejudice, *id.*, we conclude that any distinction between audiotape and videotape testimony does not materially alter a court's evaluation of whether to replay such testimony and the necessary precautions to lessen the inherent risk of undue emphasis from such a replay. Of greater consequence, we think, is "the quantum of other evidence against the defendant," the relative importance of the testimony in question, and the manner in which the testimony is provided to the jury. *Sacco*, 869 F.2d at 502.

[10]Much to the contrary, the trial court in *Binder* did not even require the tape to be played in open court, but instead permitted the jury to review it unsupervised in the jury room. *Id.* at 601 n.1.

[11]In notes to the court, the *Hernandez* jury "relayed that its final decision was based on [the witness's] testimony" and stated that it "specifically wanted to hear [the witness's] testimony regarding his encounter with the suspect . . . and his description of the suspect." *Id.* at 1405.

size a specific portion of the transcript, the district court permitted undue emphasis when it failed to admonish the jury to weigh all the evidence and to instruct that the transcript was not authoritative." *Id.* at 1409.

**[6]** The case against Richard similarly relied primarily on the identification of one witness as no physical evidence linked the gun to Richard. The failure, over Richard's objection, to provide this key witness's entire testimony is exacerbated by the jury's initial request for *all* of Reeder's testimony. Thus, not only did Richard's jury indicate its "obvious intent" to rely on a particular portion of Reeder's testimony, it did so at the request of the district court. That the jury selected the portion of testimony to be replayed does not lessen the risk it will unduly emphasize the selected testimony, but rather crystallizes it, triggering the district court's obligation to take measures to ameliorate the risk.[12] In contrast to even the minimal precautions taken by the trial court in *Hernandez*, the district court here took *no precautions what*soever to ensure that Richard's jury did not unduly emphasize the selected testimony.

## IV.

**[7]** Although the district court replayed Reeder's testimony in open court, in light of the importance of that testimony to the government's case given the relative dearth of evidence connecting the gun to Richard, this precaution alone was

---

[12]Even if a jury's selection of particular testimony could obviate the district court's obligation to prevent undue emphasis on particular testimony, Richard's jury was not even provided with all of the testimony it requested. Although the jury initially requested "Ms. Reeder's testimony from after the side bar until right after — or right toward the beginning of cross-examination," it further specified that it wanted her testimony "right around the time she was being asked to identify the defendant." However, the portion ultimately replayed for the jury omitted several minutes of identification testimony, including her first two failed attempts to identify Richard in the courtroom.

insufficient to ameliorate the risk that Richard's jury would unduly emphasize the testimony. Accordingly, we conclude that the district court committed clear error, and thereby abused its discretion, when it permitted the jury to rehear a portion of Reeder's testimony without taking any additional precautions—e.g., playing Reeder's *entire* testimony or admonishing the jury against unduly emphasizing the portion played. We therefore reverse and remand for a new trial or other appropriate disposition.

**REVERSED AND REMANDED.**[13]

---

O'SCANNLAIN, Circuit Judge, dissenting:

I begin with what one would think an unassailable proposition: An abuse of discretion standard of review presupposes that the district court has some amount of discretion. Apparently, however, that proposition is no longer true in this circuit in the context of whether and how to permit a replay of trial testimony in a criminal case. For under the court's reasoning, if a district judge is to allow a replay at all without inviting reversible error, three requirements must be met. First, the district court *must* replay the testimony in open court with all parties present. Second, if the district court decides to allow a replay, it *must* replay the witness's entire testimony, including cross-examination. Finally, the district court *must* give a limiting instruction, *sua sponte*, counseling the jury not to place undue emphasis on such testimony.

Although district courts might be well advised to observe these precautions, the majority's rigid, rule-based approach effectively usurps the trial court's function, transforming our

---

[13]As noted above, we need not—and do not—express any opinion regarding Richard's Fourth and Fifth Amendment challenges or the government's sentencing appeal.

abuse of discretion standard into a de novo review. Since I cannot conclude that the district court in this case abused its discretion by allowing an audio replay in open court of the specific portion of testimony requested by the jury, I respectfully dissent.

I

During deliberations, the jury requested to "have Nikole Reeder's testimony and cross examination." Since no transcript was yet available, the judge informed the jury that "[i]f you want to hear a readback of somebody's testimony you have to let us know what part you want to hear" and sent the jury back to the jury room for five minutes to decide. When the jury returned, it requested the portion of Reeder's testimony "from after the side bar until right after—or right toward the beginning of cross-examination." Later, outside the presence of the jury, Richard's counsel objected to playing only the excerpt selected by the jury and moved "that the court play the entire testimony of Nikole Reeder." The judge overruled the objection as untimely.

The court then replayed the requested excerpt, which comprised 10 pages of the 42-page testimony. Prior to the excerpted testimony, Reeder had testified twice that she did not recognize anyone in the courtroom as the person sitting behind her in the car when it was pulled over. During the excerpted testimony, the government produced a photograph, which Reeder had identified as Richard during the grand jury proceedings, and asked her if she saw the person in the photograph in the courtroom. Reeder testified that she did not. Then the government directed her to look at the "person sitting at the defense counsel table as the defendant," and Reeder replied, "I don't think he's in here." After another round of prompting by the government, Reeder replied that the picture looked like the defendant, but his weight and hairstyle had changed. Three pages into the replayed excerpt, Reeder finally identified the defendant.

Reeder then established that she had met Richard for the first time that night through her "man" Martin, the driver of the car. She proceeded to describe what happened while the police pulled over the car, including hearing Richard say that "he had to run, he had warrants, and he had a gun," and witnessing Richard pull a black handgun from his pants and put it in or under the seat.

After replaying the excerpt for the jury, the judge asked, "Was that sufficient for the jury then?" The foreman answered, "I think so, your honor."

## II

Our cases establish that when an objection is raised at trial, we review a district court's decision to replay testimony for an abuse of discretion. *United States v. Binder*, 769 F.2d 595, 600 (9th Cir. 1985) ("A decision to replay testimony during jury deliberations will not be reversed absent an abuse of discretion.").[1] Under the abuse of discretion standard, "we will not

---

[1]The district court ruled that Richard's objection to the district court's decision to replay a portion of Nikole Reeder's testimony was "untimely." It is well settled that an untimely objection is treated as no objection at all, and thus the alleged error is subject to plain error review. *See United States v. Olano*, 507 U.S. 725, 731 (a constitutional right "may be forfeited in criminal as well as civil cases by the failure to make *timely* assertion of the right before a tribunal having jurisdiction to determine it") (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Nevertheless, at oral argument in this case, the government conceded that the district court was incorrect in ruling the objection untimely because the objection came prior to the replay and therefore the district court had the opportunity to cure any possible error before the jury knew about it. That is true, but timeliness is not solely concerned with the possibility of cure; it is also concerned with preventing gamesmanship. *See* WIGMORE, CODE OF EVIDENCE 25 (3d ed. 1942) ("An objection must be made as soon as the ground of it is known, or could reasonably have been known to the objector, unless some special reason makes its postponement desirable for him and *not unfair to the offeror*.") (emphasis added). In this case, only after the jury decided to request a particular portion of the testimony that Rich-

reverse unless we have a definite and firm conviction that the district court committed a clear error in judgment." *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir. 1992). Moreover, in this specific context, we have noted that the trial court has " 'great latitude' over whether to allow rereading or replaying of testimony." *United States v. Sacco*, 869 F.2d 499, 501 (9th Cir. 1989) (quoting *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir. 1983)).

Applying this deferential standard of review, I would affirm Judge Mahan's ruling.

A

Although the court performed the replay in open court, as we have preferred, *see United States v. Hernandez*, 27 F.3d 1403, 1408 (9th Cir. 1994), it failed either to give a limiting instruction or to replay Reeder's testimony in its entirety. Nevertheless, because I find no support in our case law for blanket rules requiring such precautions *sua sponte*, the district judge's failure to adhere to the rules newly imposed by the majority does not *compel* the conclusion that the replay was unduly prejudicial.

1

The "facts and circumstances of the case" dictate whether the district judge should allow a replay and if so, which precautions are necessary to avoid "[u]ndue emphasis of particu-

---

ard deemed damaging did Richard's counsel object that the jury should hear *all* the testimony. If the jury had asked to rehear only the cross-examination, would an objection have been similarly forthcoming? Thus, on this record, there is at the least a concern of gamesmanship. Nonetheless, despite these concerns, I agree with the majority that because of the government's outright concession, we ought to review this case under our normal abuse of discretion standard.

lar testimony." *Binder*, 769 F.2d at 600.**²** In our previous cases, we have noted that providing the jury with "both the direct and cross-examination" of a witness's testimony can serve as a "precaution" against undue emphasis. *Hernandez*, 27 F.3d at 1409; *see also United States v. Barker*, 988 F.3d 77, 80 (9th Cir. 1993) (approving of the replay of "both the entire direct and the entire cross examination"); *United States v. Sacco*, 869 F.2d 499, 502 (same). But the majority today converts this precaution into what can only be described as a prerequisite. *See Maj. Op.* at 13866. There is no support in our case law, until now, for such an affirmative requirement; indeed, our cases have noted that the district court may permit portions of certain testimony to be reread, *United States v. King*, 552 F.2d 833, 850 (9th Cir. 1977), and it "is not required to reread all of a particular witness' testimony." *Binder*, 769 F.2d at 604 (Wallace, J., dissenting) (citing *King* for the proposition).

The lack of a rigid rule requiring *all* testimony of a given witness to be read or played back finds support in cases decided by our sister circuits, which have emphasized the great discretion that a district court is given in rereading or replaying testimony, especially when the jury does not request it. *See, e.g.*, *United States v. Bennett*, 75 F.3d 40, 46 (1st Cir. 1996) (Boudin, J.) (citing *United States v. Wright-Barker*, 784 F.2d 161, 174 (3d Cir. 1986)) (noting that "no inflexible rule exists that the cross must always be read"); *United States v. McElroy*, 910 F.2d 1016, 1026 (2d Cir. 1990) (finding the court "well within the bounds of discretion in declining to have more [than the cross-examination] reread").**³**

---

**²**Our prior cases fail to elucidate the legal basis of the "undue emphasis" concern. One court points out that "[t]hose federal cases that discuss the issue of readbacks and transcript availability do so under the rubric of the court's supervisory authority over federal criminal trials, not on constitutional principles . . . ." *Bradley v. Birkett*, 2006 WL 2430002, at *8 (6th Cir. 2006).

**³**We have taken an extraordinarily negative view of the benefits of readbacks and replays of testimony, often remarking that such actions are "dis-

While there admittedly is a danger that a partial replay may cause the jury to overemphasize certain testimony, I disagree with the majority's assertion that the trial court "crystal-lize[d]" the risk of undue emphasis when it asked the jury to select what portions to hear. *Maj. Op.* at 13871; *see also Hernandez*, 27 F.3d at 1409 (inferring the "jury's obvious intent to emphasize a specific portion of the transcript" after naming what part of the testimony it wanted excerpted). If the very act of naming which portions to rehear creates the risk of undue emphasis, then by that logic any replay request that fails to encompass the entire trial should be denied. We have already recognized the absurdity of such a proposition in *United States v. De Palma*, 414 F.2d 394, 396 (9th Cir. 1969) ("Perhaps if any evidence is read, all should be read. Any trial could thus be almost endless.").

The trial court must balance the danger of undue emphasis created by partial replays against the delays caused by replaying a witness's testimony in its entirety. *United States v. Zarintash*, 736 F.2d 66, 69-70 (3d Cir. 1984). Here the portions requested by the jury encompassed about a quarter of the roughly hour-long testimony given by Reeder. While Richard argues that replaying the rest of the testimony would not have unduly delayed the proceedings, I see no reason that the jury should be forced to listen to "additional, related testimony that the jury made clear it did not need to rehear." *Bennett*, 75 F.3d at 46.

Here the trial judge asked after replaying the excerpt whether it had been "sufficient for the jury," and the foreman responded that it was. Having afforded the jury the opportu-

favored." *Binder*, 769 F.2d at 600. In stark contrast, the Second Circuit has expressed a strong preference for readbacks, on the premise that they aid the jury in accurately and completely fulfilling their assigned role. *See United States v. Criollo*, 962 F.2d 241, 243-44 (2d Cir. 1992) (citing *United States v. Holmes*, 863 F.2d 4, 5 (2d Cir. 1988) (noting that "generally the better course of action is for a district court to allow the reading of testimony requested by the jury")).

nity to request additional testimony, which the jury declined,[4] the court did not abuse its discretion when it failed to provide the remaining 45 minutes of the Reeder testimony. *See Wright-Barker*, 784 F.2d at 174 (finding no abuse of discretion even when the "[a]dditional testimony cited by defendants [was] only 4-5 pages long," since "it was not within the jury's description" and the "jury did not request any additional testimony" when prompted); *see also McElroy*, 910 F.2d at 1026 (finding no abuse of discretion when the court refused to allow additional testimony reread, since the court asked the jury whether the reread portion was "what [it] requested" and the jury answered in the affirmative); *United States v. Rosenberg*, 195 F.2d 583, 598-99 (2d Cir. 1952) (same).

2

The majority also faults the district judge for failing to include a limiting instruction to minimize the risk of undue emphasis. While I agree that providing a limiting instruction might have been prudent, *see United States v. Lujan*, 936 F.2d 406, 411 (9th Cir. 1991), I cannot say on this record that the failure to do so warrants reversal of Richard's conviction. First, Richard failed to request such an instruction. *See Bennett*, 75 F.3d at 46 (dismissing a claim of error for failure to provide a limiting instruction that the defense did not request).

---

[4]Richard argues that the district judge "implicitly denied the jury's original request to rehear Reeder's 'testimony and cross-examination'" by "requiring the jury to decide 'what portion' they wanted to hear." However, the record belies this assertion. First, what the district court declined was the jury's request to "have" the testimony, *i.e.*, in the form of a transcript. Given our strong preference for readbacks taking place in open court, that clearly was not an abuse of discretion. Moreover, asking the jury to identify "what portion" to replay did not necessarily exclude the possibility that the jury could ask to rehear *all* of Reeder's testimony. Finally, the fact that the court asked the jury whether the requested replay was "sufficient for the jury" provided an unmistakable opportunity to request additional testimony if desired.

Further, in asking for a portion of the testimony and failing to request more when prompted, the jury may have "merely desired a confirming clarification on one point" in reaching "a verdict properly based on the totality of the evidence." *King*, 552 F.2d at 850.

B

The majority opinion takes issue not only with the form of the replay but also with the substance of the testimony that was replayed. As we noted in *United States v. Sacco*, 869 F.2d at 502, "the quantum of other evidence against the defendant" and "the importance of the [replayed] testimony in relation to the other evidence" also factor into the abuse of discretion analysis.

According to the majority, the district court committed clear error by " 'effectively repeat[ing] the entirety of the government's case' against Richard," given that "Reeder was the *only* witness to directly testify to Richard's possession of the gun—the only issue before the jury—and there was no physical evidence linking the gun to Richard." *Maj. Op.* at 13869 (quoting *Sacco*, 869 F.2d at 502). The majority analogizes this case to *Binder*, in which the government's entire case hinged on witness credibility, and distinguishes it from *Sacco*, in which ample additional evidence supported the replayed testimony.

In *Binder*, the defendant was accused of child molestation, and the parties agreed to substitute the children's videotaped testimony to relieve their apprehension about testifying in open court. "None of the other witnesses corroborated the specific allegations of the children," making their credibility "a crucial issue." 769 F.2d at 598, 601. Consequently, replaying the videotaped testimony indeed "allowed the repetition of the government's case against Binder." *Id.* at 601.

In *Sacco*, the key issue was whether Sacco knew that a large quantity of money was hidden in the trunk of his car.

Since customs officials testified they had seen Sacco "do[ing] something with his hands inside the trunk" and his hands showed traces of fluorescent powder used to mark the money, replaying one witness's deposition "did not, therefore, effectively repeat the entirety of the government's case against Sacco." 869 F.2d at 502.

Here, while Reeder's testimony was undoubtedly important, it did not comprise the "entirety" of the government's case against Richard. Indeed, the government presented other strong circumstantial evidence corroborating Reeder's testimony. First, the police recovered the weapon from inside the seat where Richard had been sitting in the car. He does not dispute the relative positions of the car's occupants, nor does he dispute that the gun was found in his seat. Second, Detective Stanton testified that the other backseat passenger, Schneider, had seen Richard with the weapon. In addition, Detective Stanton testified that Schneider was the one who initially tipped off the police that Richard had a gun in the car and that Schneider led police to the car in the impound lot and pointed out the specific position of the gun and how it had been wedged into the seat. Relatedly, there was no dispute that the car took at least a minute to stop, even though it could have pulled over immediately, giving Richard the opportunity to hide the weapon. Detective Stanton testified that in his experience, such delays usually mean an occupant of the car is attempting to hide contraband. Finally, Richard admitted to police that he may have touched the weapon.

Given the quantum of corroborating evidence against Richard, the majority's analogy to *Binder* seems strained at best. The replayed testimony was far from the only evidence implicating Richard, and the government's case did not hinge entirely on the credibility of Reeder's account of the events.[5]

---

[5]A related concern that I have is that the majority's conclusion that Richard's conviction must be reversed is overly influenced by its own perception of the reliability of Reeder's overall testimony, given her numer-

In my view, the facts of this case and the quantum of evidence set forth by the government are more akin to *Sacco*, where we affirmed the district court's discretionary decision to allow a partial replay of testimony.

## C

The majority also contends that the "portion replayed contained *only* the core of the government's case against Richard, entirely omitting large portions of Reeder's testimony . . . that may have impeached her credibility." *Maj. Op.* at 13869. Specifically, the majority contends that the replay omitted "(1) portions of Reeder's testimony that [the driver] was her boyfriend at the time; (2) Reeder's extraordinary difficulty in identifying the backseat passenger she claimed to have seen with the gun; and (3) Reeder's entire cross-examination." *Id.* at 13868-69. Consequently, in the majority's view, "the clearly one-sided nature" of the replayed excerpt warranted additional precautions.

However, as the majority reluctantly acknowledges in a footnote, *Maj. Op.* at 13868 n.8, the replayed portion of Reeder's testimony was not uniformly damaging to the defense, since it included several pages' worth of Reeder's failed attempts to identify Richard,[6] and also noted the nature

---

ous failures to identify Richard. I agree that the identification was flawed, but that question simply is not before us in any meaningful way. The jury made its credibility determinations and we are not free to inject our own views of the witness's testimony under the guise of reviewing the discretionary determination of the judge to replay part of that testimony.

[6]During the replayed testimony, Reeder indicated that she knew what the person sitting behind her in the Jeep looked like and recalled recognizing Richard's picture during the grand jury proceeding as that person. The government then showed Reeder the same picture from the grand jury proceeding:

    Q:   And is it your testimony today that you don't see that person here in the courtroom today?

of her relationship with the driver Martin (whom she repeatedly referred to as "my man").[7] Thus, the excerpt captured key credibility issues raised by Richard on appeal, including "her extreme difficulty in identifying Richard at trial and fuzziness on other details, which created doubt as to her memory and capacity to observe Richard in the vehicle,"[8] as well

---

A: No.

. . . .

Q: The person sitting at the defense counsel table as the defendant, is that the person in that exhibit?

A: A boy over there looks like him, but I'm not sure because he was smaller. So I don't think he's in here.

Reeder eventually admitted during the replayed excerpt that Richard "looks like him" and in fact was the same person in the picture, though his current hair and size made him "look[ ] different."

[7]During the replayed testimony, Reeder made clear that she and Martin had an intimate relationship:

Q: And how did you come to meet [Richard] that night?

A: Through my man.

Q: And that's David Martin?

A: Yes.

Q: Describe the nature of your relationship to [Richard] at that time?

A: He was my man. I was his girl.

Q: I'm sorry, maybe you didn't understand the question. I'm asking you to describe the nature of your relationship with [Richard] on that date?

A: Oh, my relationship with him?

Reeder then explained that she "just met him that night," and that she met him "[t]hrough my man." Presumably, she had originally misunderstood the government's question to refer to her relationship to Martin rather than Richard.

[8]Interestingly, though the majority asserts that the "case against Richard . . . relied largely on the identification of one witness," *Maj. Op.* at 13871, nowhere in the cross-examination does the defense question the reliability of her identification.

as her potential bias. Since the replayed excerpt itself impeaches the witness's credibility,[9] I cannot agree that the district court was required to direct the jury to listen to more than it had specifically requested.

### III

There can be little doubt that "[t]he district judge is in a better position than we are to determine whether the benefits of allowing the jury to review the . . . testimony outweigh[ ] the risk that the jury would give undue weight to that portion of the evidence." *Binder*, 769 F.2d at 603 (Wallace, J., dissenting). I am therefore deeply troubled by the majority's substitution of rigid rules for the sound discretion of our many able district judges. Moreover, in this particular case, while the conditions of the playback were not ideal, the additional corroborating evidence, the jury's determination that the replayed portion was sufficient, and the mixed nature of the testimony significantly reduced the risk of undue emphasis by the jury. In short, I cannot say that the replay of a portion of Reeder's testimony in this case warrants reversal of Richard's conviction.

Accordingly, I must respectfully dissent.

---

[9]The district judge's comment before playing the excerpt that "[i]t may favor the government or it may favor Richard" turned out to be prescient. As Judge Hawkins observed during the oral argument, "This may be one of those unique situations where the direct examination was more damaging to the witness than the cross."