**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

v.

WILLIAM DALE NEWHOFF, JR.,
     *Defendant-Appellant.*

No. 09-30143

D.C. No.
9:08-cr-00041-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
January 13, 2010—Seattle, Washington

Filed December 16, 2010

Before: Andrew J. Kleinfeld and Richard C. Tallman,
Circuit Judges, and Benjamin H. Settle,*District Judge.

Opinion by Judge Kleinfeld

---

*The Honorable Benjamin H. Settle, United States District Judge for the
Western District of Washington, sitting by designation.

20175

**COUNSEL**

Daniel Donovan, Great Falls, Montana, for the appellant.

William W. Mercer, United States Attorney, Helena, Montana, and Paulette L. Stewart, Assistant United States Attorney, Helena, Montana, for the appellee.

## OPINION

KLEINFELD, Circuit Judge:

We address rereading a witness's testimony to a jury during deliberations, and a sentencing issue.

## I.  Facts

This case went to a jury trial, and accounts varied. Newhoff was convicted in this case of being a felon in possession of a firearm[1] and for possession of a stolen firearm,[2] and, in a separate state proceeding, of the burglary in which the firearm was stolen. The burglary was the night of July 4, and the police contact leading to the felon in possession charge, a traffic stop, was on July 6. At trial, Newhoff stipulated that he had a prior felony conviction preceding the burglary, that the pistol had crossed state lines, and that the pistol was stolen. The only issue left for the jury to decide was whether Newhoff knowingly possessed the pistol.

On this issue, witness accounts varied. The witness whose testimony was reread was a deputy sheriff who assisted at the July 6 stop, Jared Cochran. He testified that Newhoff was driving, and that the officer who had stopped the car said that the man in the front passenger seat and the woman in the rear seat had acted as though they were passing, hiding, or manipulating something. Cochran had the woman in the rear seat dump out her purse. Out fell a small unloaded semiautomatic pistol. The only immediate trouble Newhoff was in was that Cochran thought he had been drinking, which would violate the terms of his release in another case, and that he might also have been driving under the influence. Newhoff told Cochran that he did not know his passenger had had the pistol in her possession, though he had handled it earlier that night, when

---

[1] 18 U.S.C. § 922(g)(1).
[2] 18 U.S.C. § 922(j).

she had been trying to sell it at a casino. Newhoff later denied telling Cochran that he had handled the pistol.

Newhoff and six other witnesses, friends and acquaintances of Newhoff and each other, also testified. Newhoff admitted that on July 4 he had burglarized "Old Man Bill's trailer," behind the Hellgate Trading Post, a crime he had pleaded guilty to in state court. But Newhoff testified that he had stolen only a backpack, and he did not know anything about the pistol or that it was in the car on the night of the traffic stop. But his friends and acquaintances testified that Newhoff had taken the pistol out of his back pocket and displayed the pistol to several people as he tried several times the previous evening to sell it. All rejected the pistol because his price was too high, the pistol was in poor condition, it lacked a clip, or it was not the type of gun they collected or wanted.

The backseat female passenger, Enid Hobbick, testified that she had been in the car with Newhoff and her fiancé, Robert Lee Phillips, when they committed the burglary on July 4. She testified that Newhoff had come out of Old Man Bill's trailer with a backpack, but she never saw the pistol that night. But, she testified, when they were stopped on July 6, she knew Newhoff had the pistol and told Newhoff to pass the pistol to her, because she knew he was on parole and she wanted to protect him. She testified that she told Newhoff to lay the blame for the pistol on her.

Other witnesses also put Newhoff in possession of the pistol. Robert Lee Phillips, who had joined in the burglary, testified that the night after the burglary, while he was "playing keno at Deano's casino," he saw Newhoff trying to sell the pistol. A prospective customer testified that Newhoff tried to sell him the pistol, but he collected World War II rifles and was not interested in Newhoff's overpriced pistol. One friend confirmed that Newhoff had possessed the gun, testifying that he had teased Newhoff that since he lacked the clip for the

pistol, "if you want to shoot it, you would have to single-load it every time."

The friends and acquaintances were impeached. Hobbick had been charged with possession of stolen property, but her charges had been dismissed before she testified. And she had been drunk when Newhoff and her fiancé had burglarized Old Man Bill's trailer. Her fiancé, Robert Lee Phillips, could have been the burglar who took the pistol, and her fiancé's brother, Christopher Phillips, could have been the person who passed the pistol to her during the traffic stop.

Robert Lee Phillips, whom Hobbick testified committed the burglary with Newhoff, contradicted her testimony. He testified that he was not even in the car during the burglary, and he was never charged with the crime. He testified that he remembered seeing Newhoff trying to sell the gun at the casino the next night, but he admitted that he did not remember much from the night at the casino because he was "tweaking" on methamphetamine. Of the remaining witnesses, one said Newhoff asked him if he wanted to buy a gun, but conceded that he never saw the gun. Another witness, a close friend of Hobbick, said Newhoff showed him the gun and tried to sell it to him. The lenient law enforcement treatment of Hobbick and Robert Lee Phillips could suggest an inference that they lied about Newhoff to benefit themselves.

Newhoff's attorney argued that all the friends and acquaintances the government put on were so impeachable that their stories could not be believed beyond a reasonable doubt. He provided the jury with an "Occam's razor" defense, that the pistol was found in Hobbick's purse, and the simplest explanation based on the only thing they knew for sure was that she had put it there. He also made a strong argument based on Officer Cochran's testimony. Officer Cochran had testified that the other police officer had told him that the front-seat passenger, Christopher Phillips (Robert Lee's brother), and backseat passenger, Hobbick, were "squirming around like

they were trying to hide something. Not the driver, the passengers."

During deliberations, the jury sent out a note, signed by four jurors, asking if they could look at a transcript of all the testimony. After consulting with counsel, the judge said that would be possible, but would take a few hours. The jurors responded with a note asking how long it would take to obtain the testimony for just one witness, Officer Cochran. The court answered that it would take a half-hour. The jurors asked for Officer Cochran's testimony.

Consulting with counsel, the judge advised that he would not send the transcript to the jury room, but would instead read it to the jurors in open court with counsel present. He asked if either side objected, and both counsel advised him that they did not object. The judge said, "I will give them a cautionary instruction that they're not to place undue emphasis on that testimony or any other testimony and that, still, their memory of what he said controls." The judge then called the jury back in and read the entire testimony of Officer Cochran, including the cross-examination. The jury was admonished that their memories controlled, but no admonition against placing undue emphasis on Officer Cochran's testimony was given. After reading the testimony, the court asked counsel if there was any objection to the way the readback had proceeded, and both attorneys said that they had no objection. Nine minutes later, the jury came back with a guilty verdict.

## II. Analysis

### 1. The Readback

Newhoff argues for a new trial on the ground that by reading back Officer Cochran's testimony without admonishing the jury not to give it undue emphasis, the district court caused undue emphasis to be given.

Failure to give such an admonition, assuming that it is error, does not permeate the entire framework of the trial,[3] but is simply an error in the trial process. Because it is not structural,[4] it can lead to reversal only if prejudicial.[5] Because counsel expressly stated that they had no objection to how the judge had conducted the readback, the error can justify reversal only if it was "plain error."[6] Plain error requires that (1) there must be error; (2) that error must be plain; and (3) that error must affect substantial rights.[7] Even if these conditions are met, we may notice the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[8]

[1] As for whether there was error, Newhoff argues that there was, under *United States v. Richard*,[9] *United States v. Binder*,[10] and *United States v. Hernandez*.[11] *Binder* holds that rereading a witness's testimony is disfavored when it unduly emphasizes that testimony, and that undue emphasis should not be permitted.[12] We reversed in *Hernandez*, where the district court had allowed a transcript of part of a single witness's testimony to be sent into the jury room without taking

---

[3]*United States v. Walters*, 309 F.3d 589, 593 (9th Cir. 2002) (quoting *Rice v. Wood*, 77 F.3d 1138, 1141 (9th Cir. 1996) (citation omitted)).

[4]*United States v. Soto*, 519 F.3d 927, 930 (9th Cir. 2008) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 141 (2006) (internal quotation marks and alteration omitted).

[5]Fed. R. Crim. P. 52(a); *United States v. Beard*, 161 F.3d 1190, 1193 (9th Cir. 1998).

[6]Fed. R. Crim. P. 52(b); *United States v. Lopez*, 477 F.3d 1110, 1113 (9th Cir. 2007).

[7]*United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 732-36 (1993)).

[8]*Id.* (alteration in original).

[9]504 F.3d 1109 (9th Cir. 2007).

[10]769 F.2d 595 (9th Cir. 1985), *overruled in part on other grounds by United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc).

[11]27 F.3d 1403 (9th Cir. 1994).

[12]769 F.2d at 600.

adequate precautions to avoid undue emphasis.[13] The district court had not admonished the jury that they should avoid giving undue emphasis to the testimony of the one witness in the transcript provided. We explained that "to avoid the possibility of this undue emphasis, the preferred method of rehearing testimony is in open court, under the supervision of the court, with the defendant and the attorneys present."[14] Among the benefits of this approach are that the court can assure that the jury heard the whole transcript and no one cuts off the reading by saying "I've heard enough," and counsel can correct errors.

In *Richard*, we reversed in a felon in possession case, where the jury got a readback of the only witness who saw the gun in the defendant's possession.[15] The court had denied a defense request that the jury hear all the testimony of that witness, not just a selected part, and had failed to admonish the jury against giving undue emphasis to what was read back. We held that these two factors made the conduct of the readback an abuse of discretion, and said "certain precautions must generally be taken"[16] to avoid the inherent risk of undue emphasis from a readback: (1) preferably the readback or replay should take place in open court with all present; (2) the jury should ordinarily be provided with the witness's entire testimony, direct and cross-examination; and (3) the jury should be admonished to weigh all the evidence and not just one part.[17] That the jury seeks only part of a witness's testimony does not lessen the risk of overemphasis, "but rather crystallizes it,"[18] requiring measures to mitigate that risk.

---

[13]*United States v. Hernandez*, 27 F.3d 1403, 1404 (9th Cir. 1994).

[14]*Id.* at 1408.

[15]*United States v. Richard*, 504 F.3d 1109 (9th Cir. 2007).

[16]*Id.* at 1113.

[17]*Id.* at 1114-15.

[18]*Id.* at 1116.

**[2]** The wording of *Richard* — "generally," "should ordinarily," etc. — appears to allow for exceptions, but plainly the general rule is that if the jury wants a readback, and the court exercises discretion to allow it, the court should make the jury hear the entirety of the witness's testimony in open court (except where excessive length makes that impractical and fairness can be assured by using an excerpt preferably agreed upon by counsel), with counsel for both sides and the defendant present, and with an adequate admonition. The admonition should tell the jurors that (1) because they requested a readback, it is being provided to them, but all readbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony; (2) the jury will be required to hear all the witness's testimony (except where an excerpt was selected because of excessive length), on direct and cross-examination, to avoid the risk that they might miss a portion bearing on their judgment of what testimony to accept as credible; (3) the transcript is not evidence, just a record of what the testimony was, and since nothing is perfect and the transcript could possibly contain errors, their recollections and understandings of the testimony itself rather than the transcript is the evidence on which they must make their decision; (4) the transcript cannot reflect matters of demeanor, tone of voice, and other aspects of the live testimony the jurors heard, which may affect what they judge to be credible; and (5) the testimony read cannot be considered in isolation, but must be considered in the context of all the evidence presented, both testimony and exhibits, in the jurors' exercise of their judgment.

**[3]** As for whether the error of reading back Officer Cochran's testimony without an admonition was plain, we conclude that it was. We need not explore the reasons why, because the district judge expressly decided that he should give the admonition against undue emphasis. His exercise of discretion to give the admonition was sound. The only explanation we can see on this record for not giving the admonition was that the judge forgot. That is an easy thing to do in a trial.

And it is a reason why judges do, and this judge did, ask counsel for objections. They are called "counsel," in part, because they counsel the court. It is incumbent on defense counsel to protect his client and the court from judicial error, including forgetting something, and incumbent on the prosecutor to protect the court from error, even where the error might, at least before appeal and possible reversal, benefit the prosecution. The only explanation for why both attorneys said they had no objection to failure to give the admonition is that they too forgot, again an easy thing to do in a trial. But error it was.

[4] That leaves for us the question of whether the failure to give the admonition affected Newhoff's substantial rights. We conclude that it did not, so under Federal Rule of Criminal Procedure 52(b) and *United States v. Olano*,[19] we cannot reverse. That the jury returned a verdict immediately after the readback does not show an effect on Newhoff's substantial rights, under *United States v. King*.[20] "The jury may have already reached a verdict and merely desired a confirming clarification on one point; the clarification on a point may have been the 'straw that broke the camel's back' in swaying a verdict properly based on the totality of the evidence."[21]

[5] What is most striking about this particular readback is that Officer Cochran, though called by the prosecution, provided the jury with the strongest evidence for the defense. This point was well argued by the defense. If the jury believed what Officer Cochran testified the other policeman told him, the gun was passed from the front-seat passenger, Christopher Phillips, to the backseat passenger, Hobbick. Since Newhoff was the driver, this part of Officer Cochran's testimony corroborated Newhoff's testimony that he did not possess the gun. The four jurors who requested Officer Cochran's testi-

---

[19]507 U.S. 725, 732-36 (1993).

[20]552 F.2d 833 (9th Cir. 1976).

[21]*Id.* at 850.

mony might have been asking for it to see whether it exonerated Newhoff, a position they might have been holding out for, not whether it convicted him. The testimony, though, also undercut Newhoff's defense. Officer Cochran also testified that Newhoff admitted handling the gun. Since the jury was read all of Officer Cochran's testimony, they could listen again to both points.

**[6]** Also, even though all the friends and acquaintances were of dubious character and credibility, and several might have had problems perceiving, remembering, and relating what happened because of alcohol and methamphetamine intoxication during the events, their accounts were plausible. Unlike the defendant in *Richard*, several witnesses, not just the one whose testimony was read back, put Newhoff in possession of the pistol. Two witnesses testified that Newhoff offered to sell them the pistol, one witness saw Newhoff try to sell it, at least three saw him handling it, and one testified that he had passed it to her in the car. Despite all the reasons the jury had to doubt them, their testimony was plausible and coherent enough so that they might be believed.

## 2. Sentencing

Newhoff's seventy-eight-month sentence was as high as it was because of several enhancements: (1) Newhoff had a dramatically bad criminal history, putting him in Category IV;[22] (2) the pistol had been stolen;[23] (3) he possessed the pistol in connection with a burglary;[24] and (4) he escaped from jail by removing a fixture from the ceiling of his cell and escaping through the roof while awaiting sentencing in this case.[25] Newhoff argues only that the four-level enhancement for pos-

---

[22]U.S.S.G. § 4A1.1(e); 4A1.1(d).

[23]*Id.* § 2K2.1(b)(4).

[24]*Id.* § 2K2.1(b)(6).

[25]*Id.* § 3C1.1 cmt. n.4(e).

sessing the pistol in connection with a burglary was not proved.

**[7]** The guidelines calculation challenged is under the U.S. Sentencing Guidelines Manual Section 2K2.1(b)(6),[26] possessing a firearm "in connection with" another felony. The official commentary provides at note 14 that "in connection with" applies to "a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary."[27]

Newhoff argues that there was no proof he took the pistol during the burglary of Old Man Bill's trailer. His argument is essentially that there was no direct eyewitness testimony that he found or took the gun during the burglary, just that he had it later, and he testified that he did neither. But the district judge found at sentencing that it could be inferred from Newhoff's sales efforts the next day that he was the burglar who found and stole the pistol.

**[8]** Newhoff correctly points out that the government has the burden of proof on upward adjustments for relevant conduct such as the one at issue.[28] But here the proof sufficed. The standard of proof is preponderance of the evidence.[29] Cir-

---

[26]Section 2K2.1(b)(6) provides that

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

[27]U.S.S.G. § 2K2.1(b)(6) cmt. n.14(B).

[28]*United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc) ("[W]hen the government seeks an upward adjustment, it bears the burden of proof.") (citation omitted).

[29]U.S.S.G. § 6A1.3 cmt. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process

cumstantial as well as direct evidence can prove a sentencing fact,[30] just as generally it can prove any other. We review the district court's finding of fact that Newhoff found and took the pistol during the burglary for clear error,[31] and there is none. It is a reasonable inference, from the fact that Newhoff was the burglar who was trying to sell the pistol, that he was the one who found and stole it.

AFFIRMED.

---

requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."); see also *United States v. Pham*, 545 F.3d 712, 720 (9th Cir. 2008) ("The government has the burden of proving the facts necessary to support a sentence enhancement by a preponderance of the evidence.").

[30]*United States v. Garcia*, 135 F.3d 667, 671 (9th Cir. 1998).

[31]*United States v. Bright*, 353 F.3d 1114, 1118 (9th Cir. 2004).